# JOHN W. ESTERLINE *vs.* THE STATE OF MARYLAND.

*Criminal law—Evidence on trial for assault with intent to murder—Improper remarks of State's Attorney in course of argument—Refusal of trial Court to instruct the Jury as to the law in the case.*

Upon the trial of an indictment charging assault with intent to murder, evidence that some months before the commission of the offense, the defendant had made threats against the person assaulted is admissible.

On such trial, the defendant, as a witness, may be asked on cross-examination how long he had been accustomed to carry a pistol.

In the course of a fight between two men, one of them was shot by the other. Upon the trial of the one who did the shooting, under an indictment charging assault with intent to murder, he alleged that the

shooting was done in lawful self-defense, and one of his witnesses testi-
fied that immediately after the fight, there were the marks of fingers on
his throat.  In the course of his argument before the jury, the State's
Attorney said, that if he had known such evidence would be offered,
the State could have produced a hundred witnesses to prove that there
were no finger prints on the throat of the prisoner at that time.  Upon
objection being made by defendant's counsel to this statement, the
Court said that it was not proper.  Thereupon, the State's Attorney
withdrew the remark and apologized to the Court and said to the jury
that if there had been at that time, finger prints on the defendant's
throat, he could have proved it by himself and other witnesses.  *Held*,
that the statements so made by the State's Attorney, and retracted,
does not constitute reversible error.

No appeal lies from the refusal of the Court at the trial of a criminal
case to instruct the jury as to the law.  While the Court has the right
to advise the jury as to the law, it is not bound nor can it be required
to do so, since under Constitution Art. 15, sec. 3, the jury in criminal
cases are judges of the law as well as of the facts.

*Decided April 2nd, 1907.*

Appeal from the Circuit Court for Carroll County (THOMAS, J.)

The cause was argued before BRISCOE, BOYD, PEARCE,
SCHMUCKER, ROGERS and BURKE, JJ.

*Charles E. Fink* and *E. O. Weant*, for the appellant.

*William S. Bryan, Jr., Attorney General*, and *Guy W. Steele*,
*State's Attorney*, for the appellee.

BURKE J. delivered the opinion of the Court.

The appellant was indicted, tried, and convicted in the Cir-
cuit Court for Carroll County, and was sentenced to be con-
fined in the Maryland Penitentiary for the period of fifteen
months.  The indictment contained three counts.  The first
count charged him with an assault with intent to murder
Adam E. Diehl; the second with an assault with intent to dis-
able Adam E. Diehl, and the third with common assault
committed upon the said Diehl.

A motion for a new trial was made, and, among other
grounds assigned, it was stated that there was no legally

sufficient evidence to warrant the jury in finding a verdict of guilty upon the second count of the indictment. This motion was heard by the Hon. William H. Thomas, the Associate Judge, before whom the case was tried, and was overruled.

This apppeal was then taken, and it brings up seven exceptions to the rulings of the Court below taken by the appellant during the progress of the trial. Four of these exceptions relate to the admission of evidence, and three to certain remarks made by Mr. Guy W. Steele, the State's Attorney for Carroll County, in the course of his argument to the jury. These remarks, it is contended constitute such misconduct on the part of the State's Officer as to justify this Court in reversing the judgment and granting a new trial.

We will now state the evidence which constitutes the first, second, third, and fourth exceptions, which were taken to the admission of certain portions of the testimony of D. Jonas Lippy; Mrs. Adam E. Diehl and John W. Esterline, the accused. This testimony, which was admited against the objection of the traverser, is this: Lippy testified that in February or March preceding the assault, which occurred on the 3rd of August, 1906, he heard the prisoner say he was going to shoot the son of a bitch, and that he asked Esterline to whom he referred, and that the accused replied, "that big son of a bitch up town;" that he said to the accused "tell me who it is," and the prisoner said "my brother-in-law up town." The evidence shows that the prosecuting witness was the only brother-in-law of the defendant living in that locality. Mrs. Adam E. Diehl testified that on the 13th day of April, 1906, the prisoner said to her that he was going to kill the whole family; "he looked over to me and said I am going to kill the whole family, and then I know I will have a rest." In his cross examination of the accused the State's Attorney asked him how long he had been accustomed to carry a pistol. Objection was made to this question, but the Court permitted it to be answered, and this ruling is the basis of the third bill of exception. The answer of the witness was that he had owned one off and on for a good many years, but so far as he could

remember he had never carried One. This constitutes the fourth exception.

In order to convict upon the first count of the indictment it was necessary to show a state of facts upon which the accused could have been convicted of murder had the prosecuting witness died as a result of the assault. Malice was therefore an essential element in the crime charged in the first count, because malice is the chief and distinguishing characteristic of murder, and hence it was indispensibly necessary for the State to allege and prove malice before a conviction could be had upon the first count in the indictment. Malice is either express or implied. Both express and implied malice may be proved by a deliberately formed design to kill; by the preparation of the weapon or other means for doing great bodily harm; by circumstances of brutality attending the act, or by previous hostility, or threats and declarations of intention to kill, or to do serious injury. The rule upon this subjet is thus stated in 1 *Bishop Crim. Prac.*, 3rd. ed. 673: "It is competent to show against the defendant that he bore toward the party injured enmity of a sort tending to the criminal result. For the same and even for a stronger reason, threats made by the accused, prior to the commission of the alleged offense, may be shown against him. Nearness, or remoteness of time, intervening conduct, and the like, will considerably affect their weight."

It is stated in *Wharton's Crim. Evidence*, sec. 756 that "declarations of intention and threats are admissible in evidence, not because they give rise to a presumption of law as to guilt, which they do not, but because from them, in connection with other circumstances, and on proof of the *corpus delicti*, guilt may be logically inferred threats against a class may be put in evidence as explaining the character of the attack on an individual belonging to this class, though to make threats admissible there must be some kind of individuation showing that the person injured was in some sense within the scope of the threats."

The facts of the case bring the admissibility of the testi-

mony embraced in the first, second, third and fourth exceptions within the operation of these rules, although it must be noted that the defendant could not possibly have been injured by the answer to the question embraced in the fourth exception, because, assuming the form of the question to be objectionable, the answer of the witness denied that he was accustomed to carry a pistol.

The accused and the prosecuting witness were brothers-in-law, and lived in adjoining properties. For a number of years they had been on bad terms, and on three prior occasions they had had personal encounters. This feeling of personal hostility seems to have become more intensified about the last part of February preceding the assault charged in the indictment, when they ceased speaking to each other, and shortly thereafter the threats of personal violence introduced in evidence were made by the accused. The theory upon which the case was tried by the State was that the accused, intending to carry out these threats, prepared his pistol, provoked a quarrel with Diehl, who invited him out to fight, and that Esterline, under the pretense of self defense, maliciously and without justification, shot his brother-in-law. The theory of the defense was that Diehl provoked the quarrel and was the aggressor in the assault which ensued, and that the pistol, being in the possession of the prisoner for a lawful and innocent purpose, as explained by him in his evidence, was obliged in self defense to protect himself from serious bodily harm from the assault made upon him by Diehl, who was a much larger man and of much greater strength than himself. Both the State and the defense offered testimony tending to support these conflicting theories. The jury was the proper tribunal to pass upon the weight of testimony and the credibility of the witnesses, and their finding upon the facts is not reviewable by this Court. We have examined the record carefully and we fail to find any error in the rulings which constitute the first four bills of exceptions.

2. The fifth, sixth and seventh exceptions relate to what is claimed to be the misconduct of the State's Attorney. Mary J.

Diehl, a witness produced on behalf of the accused, had testified that immediately after the shooting the prisoner had finger prints on his throat, and in commenting upon this testimony in his argument to the jury Mr. Steele declared that, had he known the defense would produce such evidence, the State could have produced a hundred witnesses to prove that there were no finger prints on his throat at that time.   Whereupon, the record states, "the counsel for the prisoner addressed himself to the Court, and objected to the above statement by the State's Attorney, and the Court said; "yes, Mr. Steele, that is not proper," and thereupon the State's Attorney apologized to the Court, and withdrew his remark and stated to the jury; "Well, I can say this, that if there had been finger prints on his throat he, the prisoner, could have proved it by himself and other witnesses."   This constitutes the fifth exception. Mr. Steele then read to the jury the law in reference to the use of deadly weapons, and the presumption of malice arising therefrom, and the law in reference to the right of self defense, and the use of deadly weapons therein, and the counsel for the prisoner in reply read the law in reference to the same subject and commented upon it.   The State's Attorney in his closing argument to the jury said that the jury had a right to call upon the Court for instruction if they doubted the correctness of the construction placed by him on the law, and during his argument as to the law applicable to the first count of the indictment, he stated that malice could be presumed from the use of a deadly weapon, and that the law would not permit a deadly weapon to be used by one to repel a simple assault when there was no danger of death or grievous bodily harm, and that if the prisoner was the aggressor, or left a place of safety for one of danger, he could not rely upon a plea of self defense.   He then stated that if a deadly weapon was used the plea of self defense was barred; and if a deadly weapon was used then it was not excusable homicide and the prisoner could not rely upon self defense or justification.

Whereupon the counsel for the prisoner objected to the statement of the law of the case by the State's Attorney, but

the Court omitted to correct or stop the State's Attorney in his line of argument, and suffered him to continue to so argue, and to this omission of the Court the prisoner by his counsel excepted. This constitutes the sixth bill of exception.

The seventh exception was taken under the following circumstances. The State's Attorney again told the jury they could call upon the Court to express its views of the law applicable to the case to verify his statement of what the law was, or if they doubted the correctness of the law as he stated it. He also told the jury that if they did not believe the prisoner to be guilty of an assault with intent to kill and murder, as charged in the first count of the indictment, they could if they believed he intended to disable the prosecuting witness find him guilty on the second count; and in arguing what assault to disable meant under the Code, his line of reasoning was such as to induce the inference that if the prisoner would have been guilty of manslaughter, if Diehl had died from the effects of the wound, then they could find him guilty under the second count; and in substance said that if the jury did not believe the prisoner guilty of assault with intent to kill, they could find him guilty on the second count of the indictment, if they believed that the prisoner would have been guilty of manslaughter had Diehl died from the effects of the shot.

Counsel for the prisoner objected to the above statement and appealed to the Court to state its views of the law applicable to the case, and to correct what he stated to be the misstatement of the law by the State's Attorney. In reply the Court said: "Gentlemen, I think you have both fully read and given to the jury all the law bearing on the case, and they are the judges of the law and the facts." The prisoner's counsel then addressed the State's Attorney as follows: "Mr. Steele, I put the question to you, and I ask you to say, whether if Diehl had died from the effects of the wound and the prisoner would have been guilty of manslaugter, the jury can now find him guilty on the second count of the indictment?" To this question, after some hesitation, the State's Attorney replied: "Well, Mr. Fink, I do not know, I wouldn't be willing to an-

swer that question without consideration." The State's At-
torney then went on with his argument, and touched upon the
question of manslaughter no further.

The thing complained of by the appellant in the sixth and
seventh exceptions is the *refusal* of the Court to instruct the
jury as to the law of the case upon the suggestion of the
State's Attorney, and upon the request of counsel for the ac-
cused. Section 3, Art. 15 of the Constitution, declares that
"in the trial of all criminal cases, the jury shall be the judges
of the law as well as fact." This provision appears for the
first time in the Constitution of 1851, and was first considered
by this Court in the case of *Franklin* v. *The State*, 12 Md. 236,
where it was held that the jury could not decide upon the
constitutionality of an Act of the General Assembly, but that
they had a right to affix their meaning on the particular law,
and to determine for themselves whether the facts proven
brought the traverser within that meaning. While the Court
has the *right* to advise the jury in a criminal case, it is not
*bound*, and cannot be *required* at the request of counsel or jury
to do so. Such instructions as it may give are *merely advisory*,
and may be disregarded by the jury. If, however, it does in-
struct, such instruction, if erroneous, is open to review in
this Court, if properly presented by the record. These propo-
sitions have been settled by a number of decisions in this
State, among which are *Broll* v. *The State*, 45 Md. 356; *Bal-
timore & Yorktown Turnpike Co.* v. *The State*, 63 Md. 573;
*Beard* v. *The State*, 71 Md. 275; *Wheeler* v. *The State*, 42 Md.
563; *Swan* v. *The State*, 64 Md. 423; *Guy* v. *The State*, 96
Md. 699.

In *Broll* v. *The State, supra*, the appeal was by the accused
from the refusal of the Court to instruct the jury. The Court,
after quoting the constitutional provision, said that the jury
being the judges of the law as well as of fact in criminal cases,
"would not be bound by any instruction given by the Court;
but would be at perfect liberty to utterly disregard them, and
find a verdict in direct opposition to them. No Court in this
State can be *required* by counsel or jury to give instructions

either upon the law, or the legal effect of the evidence given at the trial. The Court may, in its discretion, advise the jury as to the law and legal effect of the evidence, but is not bound to do so, and being a matter entirely within its discretion, its refusal to do so cannot be reviewed by this Court."

It is the duty of counsel to confine himself in argument to the facts in evidence, and he should not be permitted by the Court, over proper objection, to state and comment upon facts not in evidence, or to state what he could have proven. Persistence in this course of conduct may furnish good grounds for a new trial. The conduct of the trial must of necessity rest largely in the control and discretion of the presiding Judge, and the appellate Court should in no case interfere with the judgment, unless there be an *abuse of discretion* by the trial Judge of a character likely to have injured the complaining party.

We find nothing in the fifth exception sufficient to disturb the judgment. It was undoubtedly improper for the State's Attorney to have told the jury that he could have proved by a hundred witnesses the falsity of Mary J. Diehl's testimony, that the prisoner had finger marks on his throat immediately after the shooting. This remark was objected to as improper, and the Court in the presence of the jury told the State's Attorney that it was not proper for him to make that statement. The State's officer then apologized for making it and promptly withdrew the objectionable statement. It is not to be presumed that a body of competent and honest men, sworn to try the issue of the traverse upon the evidence produced before them, would permit the statement to influence their finding, after the Court had pronounced it to be improper, and after it had been withdrawn from their consideration. The observations of Mr. JUSTICE BROWN upon this subject in *Dunlop* v. *The United States*, 165 U. S. 486, may well be applied to the facts embraced in this exception: "There is no doubt that in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony and which are, or may be prejudicial to the accused. In such cases, however, if the

Court interfere, and counsel promptly withdraw the remark, the error will generally be deemed to be cured. If every re- mark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation."

The accused elected to try his case before the jury, and they have convicted him upon the second count of the indictment. The careful and conscientious Judge, before whom the case was tried, and who observed the demeanor of witnesses, and who was able to judge of the probable effect upon the jury of the remarks of counsel as well as of all the events and circumstances of trial, refused to grant the motion of the appellant for a new trial, and as we find no error of law committed by the Court in its rulings, and no abuse of discretion by the Court, and no other error of which the defendant can be heard to complain in this Court, the judgment must be affirmed.

*Judgment affirmed.*