# LARRY RUDOLPH MARSHALL v. STATE OF MARYLAND

[No. 77, September Term, 1980.]

*Decided October 15, 1980.*

The cause was argued before MORTON, THOMPSON and LISS, JJ.

*James J. Fabian, Assigned Public Defender,* for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Joseph E. Moore, State's Attorney for Worcester County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

The appellant, Larry Rudolph Marshall, was tried before a jury in the Circuit Court for Worcester County, Chief Judge Daniel T. Prettyman presiding. Charged with the robbery and murder of one Harry Waters, the jury, applying the felony murder rule, found the appellant guilty of first degree murder. The appellant's contentions will be set out separately.

## I Facts

Early on the morning of February 10, 1979, with the temperature at approximately 8 degrees F. the victim, Harry Waters, was found lying across the seat of his pickup truck which was parked on Willow Street in Pocomoke City, Maryland. When found, Mr. Waters, who was 72 years old, was unconscious. There was frost on his hair and clothing and his body temperature was abnormally low. He was transported by helicopter to Peninsula General Hospital Medical Center where he died some time later. The cause of death was determined to have been a large subdural hematoma, i.e., a blood clot on the brain, with hypothermia, caused by exposure, a contributing factor. It was testified that the hematoma was the result of the victim's striking his head on a stationary object.

Briefly stated, the evidence showed that, at approximately 10 p.m. on February 9, 1979, the victim left a bar, where he had been drinking that evening, accompanied by the appellant and the appellant's sisters, Barbara and Delores Marshall. A short distance from the bar, the appellant seized the victim and held him while Barbara Marshall removed the victim's wallet from his pocket. At the same time, Delores Marshall removed some money from another pocket. After the money was removed from the wallet, the wallet was returned to the victim. At some point, the appellant struck the victim in the face, causing the victim to fall on the sidewalk, striking his head and rendering him unconscious. After making an attempt to revive the victim, the appellant and his sisters carried the victim to his truck, which was parked a short distance from the bar, and placed him inside the cab. The appellant and his sisters then returned to the bar.

## II Preliminary Hearing

The appellant's first contention is that the Circuit Court "erred in failing to use its discretion in determining the question of appellant's request for preliminary hearing."

The appellant was arrested on February 12, 1979. He made a timely request for a preliminary hearing, pursuant to Art. 27, § 592 (b) (1), Annot. Code of Md. (1976 Repl. Vol.). On February 26, 1979, before the requested preliminary hearing had been held, the appellant was indicted by the Grand Jury. Thereafter, the appellant filed a motion for a preliminary hearing in the Circuit Court. The court below granted appellant's motion; however, upon the State's motion for reconsideration, the court reversed its ruling and denied the requested hearing.

It is the appellant's contention that, under Art. 27, § 592 (b) (3), the court may, in its discretion, afford a preliminary hearing to a defendant who has been indicted by the Grand Jury. He argues that the court below failed to exercise its discretion in refusing to grant the requested hearing. Article 27, § 592 (b) (3), states in part:

> "If the state's attorney elects to charge the accused by grand jury indictment, the preliminary hearing is not a matter of right to the defendant but may be afforded in the court's discretion."

Former Maryland District Rule 741, which covered preliminary hearings, duplicated in general the language of Section 592 and in particular the language of Section 592 (b) (3) quoted above. Effective July 1, 1977, the rules contained in Chapter 700 were revised. In the revision, M.D.R. 741 was replaced by M.D.R. 727. It is M.D.R. 727 which was in effect at all times relevant to the instant case.

M.D.R. 727 f 1 contains the following:

> "A preliminary hearing may not be held if before it is held:
> 1. An indictment is filed in the Circuit Court; . . ."

Thus, there now exists a conflict between the statute, Art. 27, § 592 (b) (3) and the rule, M.D.R. 727 f 1. As the rule was adopted subsequent to the enactment of the statutory provision, the rule prevails. *County Federal Savings and Loan v. Equitable Savings and Loan Association, Inc.,* 261 Md. 246, 274 A.2d 363 (1971); *Scott and Wimbrow, Inc. v. Wisterco Investments, Inc.,* 36 Md. App. 274, 373 A.2d 965, *cert. denied,* 281 Md. 743 (1977). It follows the appellant was not entitled to a preliminary hearing.[1]

### III Witness Sequestration

The appellant's second contention is that the court below erred in refusing to permit a defense witness to testify after the witness had violated the witness sequestration order imposed at the start of the trial.

On the evening of the second day of trial and again at the start of the third and final day of trial, defense counsel sought to place on the witness stand one Rosie Jones. The State objected based on violation of the sequestration order. Ms. Jones had been present in the courtroom during the second day of trial and had heard the testimony given. Defense counsel indicated that the witness entered the courtroom as a spectator unaware that she had any knowledge which was relevant to the case. When she became aware that she did possess some relevant information, Ms. Jones so informed an attorney present in the courtroom. The attorney in turn informed defense counsel of her presence. The record is unclear as to exactly when defense counsel became aware that Ms. Jones was a potential witness; it is clear that he did not inform the court that she was present until he attempted to put her on the stand.[2]

---

**1.** Of course, an accused who believes that he is being held without probable cause is not without remedy simply because he has been indicted by the Grand Jury. A writ of habeas corpus may be sought at any stage in the proceedings from any judge other than a district judge. *See,* Md. Rules of Procedure, Chapter 1100, subtitle Z, Md. Cts. & Jud. Proc. Code Ann. §§ 3-701 et seq.

**2.** The appellant testified that he carried the victim to the victim's truck, which was parked on Willow Street, and left him there. The appellant further testified that, while driving through Pocomoke at approximately 3 a.m. on the following morning, he viewed Willow Street and observed that the

A decision concerning the admission or exclusion of the testimony of a witness who has violated a sequestration order is within the sound discretion of the trial court. Md. Rule 755 d; *Brown v. State,* 272 Md. 450, 325 A.2d 557 (1974); *Pierce v. State,* 34 Md. App. 654, 369 A.2d 140, *cert. denied,* 280 Md. 734, *cert. denied,* 434 U.S. 907 (1977).

In *Hurley v. State,* 6 Md. App. 348, 351-52, 251 A.2d 241, *cert. denied,* 255 Md. 742 (1969), referring to former Md. Rule 753 (now Rule 755), we stated the "essential purpose" of the sequestration rule: "[T]o prevent one prospective witness from being taught by hearing another's testimony; its application avoids an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony; it may also avoid the outright manufacture of testimony." Here, defense counsel stated that the testimony of Ms. Jones would tend to corroborate that of the appellant. As noted above, Ms. Jones had been present in the courtroom while the appellant gave the testimony which Ms. Jones offered to corroborate. Under these circumstances, the potential for the witness having been "taught" by hearing the appellant's testimony, with a resulting "artificial harmony of testimony," is obvious. Such an occurrence is precisely what sequestration is intended to prevent. *Pierce v. State, supra* at 664. Although the appellant claimed that the witness entered the courtroom unaware that she was a potential witness and unaware that witnesses were required to be sequestered, the trial court did not abuse its discretion in refusing to permit Ms. Jones to testify. *Cf., Pierce v. State, supra; McKnight v. State,* 33 Md. App. 280, 364 A.2d 116 (1976), *reversed on other grounds,* 280 Md. 604, 375 A.2d 551 (1977).

---

victim's truck had been removed. The appellant's testimony was given on the second day of trial. (The appellant apparently intended that the jury infer from this testimony that, after the appellant left the victim in the parked truck, some third person drove away with the truck and the victim. Presumably, it was also to be inferred that Mr. Waters' fatal injury was inflicted by this third person.) According to the proffer made by defense counsel, Ms. Jones, had she been permitted to testify, would have corroborated the appellant's testimony concerning the removal of the victim's truck. She would have testified that she had driven into Pocomoke at approximately 4 a.m. on the morning the victim was found and that she observed that no vehicles were parked on Willow Street at that time.

## IV Perjury Warning by Trial Judge

At trial, Trooper D. Bruce Hornung of the Maryland State Police testified concerning an oral statement made by the appellant while he was being questioned by the police on February 12. Trooper Hornung testified to the appellant's detailed account of the robbery and murder of Harry Waters, including the facts surrounding his participation therein. At trial the appellant testified at length. On direct examination, he gave testimony which duplicated in every pertinent detail the earlier statement which he had given, as recalled by Trooper Hornung; yet, when he was questioned on cross-examination concerning the oral statement, he denied having made certain statements attributed to him by the trooper and accused Trooper Hornung of testifying falsely. The court below then excused the jury and cautioned the appellant that he was under oath and that he could be charged with perjury if he failed to tell the truth. The court reminded the appellant that he had testified before the court at a suppression hearing held one week prior to trial and had indicated at that time that the trooper's recollection of the oral statement was accurate. The court informed the appellant that he was attempting to contradict his earlier testimony and that he would be charged with perjury if he persisted in the attempt. Thereafter, following consultation with defense counsel and the return of the jury, the appellant admitted that Trooper Hornung's account of the oral statement had been accurate.

The appellant contends that the trial court, by warning the appellant he would be charged with perjury if he testified falsely, denied him "the right to present his defense and thus violated due process of law." He asserts that the actions of the court below make the instant case analogous to that of *Webb v. Texas,* 409 U.S. 95, 93 S. Ct. 351, 34 L. Ed. 2d 330 (1972), where the trial judge took it upon himself to deliver a lengthy and threatening statement, directed at the sole defense witness, advising the witness that he need not testify and admonishing him as to what the court considered to

be the possibile penalties for perjury.[3] The witness then declined to testify. The Supreme Court reversed Webb's conviction holding that "the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* 409 U.S. at 98.

We find the instant case and *Webb* to be in no way analogous. In *Webb,* the trial court delivered its admonition before the witness had begun to testify; as the Supreme Court stated: "[T]he judge implied that he expected [the witness] to lie. . . ." *Id.* 409 U.S. at 97. In the case at bar, the court cautioned the appellant only after he had begun to give testimony on cross examination which was inconsistent with that which he had given on direct. Unlike the trial court in *Webb,* the court below did not expect the witness to lie. The court acted only after it appeared that the witness had in fact lied: unlike the *Webb* court, whose apparent purpose was to intimidate and to prevent the witness from testifying, the court below acted only to insure that the witness testified truthfully.

*Webb* is also distinguishable in the quality and nature of the admonition delivered by the respective trial courts. In *Webb,* the court made predictions as to the consequences of giving perjured testimony which may well have had little basis in fact; as the Supreme Court noted: "At least some of these threats [made by the *Webb* court] may have been beyond the power of this judge to carry out." *Id.* 409 U.S. at

---

3. The witness in *Webb* was a convicted criminal currently serving time in prison. When he was called to the stand, the court delivered the following warning:

"If you take the witness stand and lie under oath, the court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [sic] is that you would get convicted of perjury in that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you are up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath." *Id.* 409 U.S. at 96.

97. In contrast, the trial court here simply stated, in temperate and restrained language, that the appellant would be charged with perjury if he testified falsely. There is no denial of due process where the witness is merely advised that he may be charged with perjury if he commits perjury. *See, United States v. Nunn,* 525 F.2d 958 (5th Cir. 1976); *United States v. Gloria,* 494 F.2d 477 (5th Cir. 1974).

Unquestionably, a fundamental element of the due process guaranteed by the Fourteenth Amendment is the right of an accused to present a defense, to present his own witnesses, and to offer his own testimony, but an accused has no right to commit perjury. We hold that it is proper for a court to mildly caution a witness with respect to testifying truthfully and to advise the witness of the penalties for perjury where, based on the statements or actions of the witness, it appears that such an instruction is necessary to prevent or to terminate the commission of perjury.[4] *See, Commonwealth v. DiGiacomo,* 345 A.2d 605, 607 (Pa. 1975) ("[W]here the occasion for the admonition was obvious and its nature was not that of a threat, there is no basis for finding a parallel with the facts in *Webb.*")

## V Additional Contentions

The appellant contends that the evidence presented at the trial was insufficient to sustain a finding that the victim was fatally injured during the course of a robbery; he also contends that the court below committed reversible error in its admission of hearsay testimony. The contentions are without merit.

It is well established that an extrajudicial confession or incriminating admission by an accused is not sufficient to warrant conviction of the accused absent either direct or circumstantial evidence, independent of the confession or admission, tending to establish the *corpus delicti. Bagley v. State,* 232 Md. 86, 192 A.2d 53 (1963); *Franklin v. State,* 8

---

4. Such a warning should be given outside the presence of the jury. *Cf.,* Long v. State, 31 Md. App. 424, 356 A.2d 588 (1976) (court's instructions to sheriff, delivered in jury's presence, to hold witness following completion of testimony, implied that witness had committed perjury and was impermissible comment on witness's credibility).

Md. App. 134, 258 A.2d 767 (1969), *cert. denied,* 257 Md. 733 (1970). With regard to this requirement, this Court has stated:

> "The sufficiency of this independent evidence need not establish, by itself, the *corpus delicti* beyond a reasonable doubt, but any facts and circumstances that are substantial in nature and fortify the truth of the confession or statement are sufficient to support a conviction. The character, nature, and amount of independent proof of the *corpus delicti* need not, of itself, be full and positive; it may be circumstantial in nature when direct evidence is not available. In short, the existence of such independent proof is to be determined largely by the circumstances of each particular case. And it has been held that testimony in proof of the *corpus delicti* is sufficient if it establishes facts that are consistent with the commission of a crime, although they may at the same time indicate, or be consistent with, a noncriminal causation." 8 Md. App. at 140. (citations omitted).

As we stated in our discussion above, the appellant in the instant case testified at trial and confirmed the occurrence of and his participation in the robbery and murder of the victim. There was testimony presented at trial to the effect that the victim habitually carried large sums of cash upon his person; that prior to the occurrence of the robbery he had been displaying money in the bar; and that, when the victim was discovered the next morning, his wallet was empty and his trouser pocket was turned inside out. Finally, one Clyde Copes testified that, prior to the robbery, Barbara Marshall told him that she would "like to see the old man outdoors . . . so I can get my hand on some money."

We find that this evidence, all of which was independent of appellant's oral statement, was sufficient to establish that the victim was robbed and that the victim was fatally injured during the course of that robbery. *Cf. Stevens v. State,* 232 Md. 33, 192 A.2d 73, *cert. denied,* 375 U.S. 886

704

(1963) (evidence independent of extrajudicial confession, held sufficient to establish *corpus delicti* of robbery).

The appellant also argues that the testimony of Sergeant Vernon Hope and of Corporal Willis G. Windsor was "replete" with hearsay, but the appellant fails to refer us to the specific statements which he contends were improperly admitted over his objection. As this Court has stated previously, it is the responsibility of the appellant to be specific in the assignment of error; the appellant "must pinpoint the errors raised on appeal and ... support [his] contentions with well-reasoned legal argument." *Federal Land Bank v. Esham,* 43 Md. App. 446, 458, 406 A.2d 928 (1979); see, Md. Rule 1031. We decline to consider the question.

*Judgement affirmed.*
*Appellant to pay the costs.*