# RANDOLPH THOMAS v. STATE OF MARYLAND

[No. 243, September Term, 1981.]

*Decided December 7, 1981.*

The cause was submitted on briefs to MASON, LISS and BISHOP, JJ.

Submitted by *Michael R. Braudes, Assistant Public Defender,* and *Alan H. Murrell, Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *John Thompson, Assistant State's Attorney for Baltimore City,* for appellee.

BISHOP, J., delivered the opinion of the Court.

Randolph Thomas, the appellant, was indicted for first-degree premeditated murder, felony murder, armed robbery, use of a handgun in the commission of a violent crime, and various lesser included offenses, related to an incident of February 11, 1980. He was tried by a jury in the Criminal Court of Baltimore on September 4-16, 1980.

The jury convicted Thomas of both felony murder and armed robbery. The trial judge merged the armed robbery conviction into the felony murder conviction and imposed a sentence of life imprisonment, suspending all except fifty years of that term.

On appeal Thomas asks:

"1. Did the trial court err in denying Appellant's motion to suppress predicated upon the lack of specificity of the search warrant?

2. Did the trial court err in failing to provide defense counsel with the complete grand jury testimony of Melvin Thomas?

3. Did the trial court err in denying motions to strike two jurors for cause?

4. Did the trial court err in denying Appellant's motion to dismiss predicated upon the denial of a preliminary hearing?

5. Did the trial court err in overruling Appellant's objection to a question by the prosecutor implying that Appellant had committed an unrelated crime?

6. Did the trial court err in instructing the jury that searches and seizures leading to the introduction of evidence against Appellant were valid and authorized?

7. Did the trial court err in permitting the jury to take into the jury room during deliberations only the court's instructions regarding the definition of the alleged offenses and not matters such as the State's burden of proof, the presumption of innocence, and the definition of 'reasonable doubt'?

8. Did the trial court err in permitting the prosecutor in closing argument to argue facts not in evidence?"

For the reasons set forth in this opinion we answer each and all of the appellant's questions in the negative, and we affirm his conviction.

## The Facts

On February 11, 1980, at approximately 9:00 p.m., three armed men wearing ski masks entered Charlie's Bar on East Baltimore Street. At gunpoint one of these robbers took $77.00 from the bar's cash register. The State contended at trial, and the Baltimore City jury concluded, that this robber was the appellant.

A second gunman, subsequently identified as one Darnell Williams, shot a bar patron in the face with a 12-gauge shotgun, instantly killing the victim.

The third gunman, one Michael Mebane, having previously pled guilty to second-degree murder, testified as a

State's witness at the appellant's trial. Mebane testified that Thomas was the robber who stole the $77.00 of cash.

Further testimony was provided by Detective James Ozazewski who testified that subsequent to the offense he interviewed Randolph Thomas. According to Detective Ozazewski, the appellant initially admitted involvement in the crime but subsequently denied participation.

The appellant himself testified that he spent the evening of February 11, 1980 watching television. He speculated as to the "actual" identity of the other robber as a friend of Williams and Mebane. Randolph Thomas testified that certain physical evidence of the crime, seized from the appellant's home, belonged to Mebane.

Additional facts will be presented with the discussion of each issue.

I. *Search Warrant*

A search and seizure warrant signed by a reviewing judge on February 20, 1980, supported by a written application and attached affidavit, was submitted to the lower court. On the date the warrant was signed, the police executed the warrant at the premises designated in the warrant. Items seized included a pair of tennis shoes and part of a shotgun stock.

At trial the appellant moved to suppress the seized items on the grounds that they were obtained during an illegal search and seizure. Specifically the appellant contended that the search warrant inadequately described the premises of the search.

At the suppression hearing, on September 4, 1980, the lower court learned that the search warrant described the place to be searched as:

"907 E. Lombard Street which is an eleven story high rise consisting of the first floor being a Lombard Street address with a white door with the numerals 907 above the door [,] in the City of Baltimore[.]"

The warrant, which used wording identical to the application for the warrant, listed the concealed property to be seized, namely:

"Black ski mask with yellow rings around the eyes, nose and mouth, red and blue ski mask, revolver, sawed off shot gun, tennis shoes [,] which is evidence relating to the commission of a crime pertaining to Homicide of Robert Lee Perrear and Robbery of Charley's Bar [.]"

Defense counsel contended that the search and seizure warrant was "too general" because it did not state the appellant's name, and did not direct the police officers to a specific apartment. No relevant authority was cited in support of these contentions, and defense counsel conceded that no requirement existed for the inclusion of a suspect's name on a search warrant.[1]

The lower court, seeing the warrant's affidavit, and learning that the appellant's brother served as informant for the affidavit, denied the motion to suppress. The court stated that the warrant was sufficiently specific.

In a later hearing, on September 5, 1980, the lower court asked the defense counsel if he had been fully heard in his argument on the motion to suppress. With the court's indulgence, defense counsel expanded the grounds of the motion to include a challenge to the reliability of the affidavit's informant, Melvin Thomas, the appellant's older brother. The lower court again denied the motion to suppress the seized items having read the statements attributed to Melvin Thomas.

The items seized from the residence of the Thomas family were admitted into evidence in the trial of Randolph Thomas. The shotgun stock found at the appellant's residence was proven to be the murder weapon, and the tennis shoe matched a shoeprint found at the crime scene.

---

1. The appellant's attorney later referred to this court's decision in *Giles v. State,* 10 Md. App. 593, 271 A. 2d 766 (1970), but he conceded that the case was "not on point," and he does not cite the case in his brief. In our analysis, *infra* we distinguish *Giles* from the present case.

On appeal Randolph Thomas contends that the lower court erred in denying his motion to suppress, and on the same basis, his motion for a new trial.

The basis for his challenge to the search and seizure is now phrased "that the warrant contained a description of the place to be searched which was so general as to fail to meet the specificity requirement of the Fourth Amendment."

The appellant does not support his contention with reference to apposite Maryland case law, but rather chooses to distinguish cases in which this Court upheld the use of items seized during the execution of search warrants at multiple-unit dwellings.

In his brief the appellant states in part:

> "The decisions of this Court on this issue have turned on whether the police knew or should have known that the building was a multiple-occupancy structure. In both *Delly v. State,* 30 Md. App. 391, 352 A.2d 331 (1976), and *Butler v. State,* 19 Md. App. 601, 313 A.2d 554 (1974), this Court held that the police could reasonably have believed the relatively small buildings at issue to be single-family dwellings; the street address was therefore sufficiently specific. It is the clear implication of both cases, however, that where a conventional multiple-unit apartment building is at issue, greater specificity is required."

The appellant then distinguished between the facts of *Delly* and *Butler* and his own circumstances, and asserts:

> "In the present case, the building at issue is an 11-story apartment structure which could not reasonably have been perceived by anyone as a single-family dwelling. Accordingly, the warrant constituted a 'general warrant' purporting to give the police the authority to search numerous residences which they had no probable cause to search. The motions to suppress and for a new trial should have been granted."

Having examined the record and the authority relied on by the parties to this appeal, we find that the search warrant used by the police in this case did not constitute an illegal general warrant.

Maryland law required no stricter test of the specificity of a search warrant than that the warrant, "shall name or describe, with reasonable particularity the ... building, apartment, premises [or] place .... to be searched...." *Harris and Schmitt v. State,* 17 Md. App. 484, 487, 302 A.2d 655 (1973), citing Md. Code Art. 27, § 551.

In *Harris, supra,* at 486 quoting from *Frey v. State,* 3 Md. App. 38, 46, 237 A.2d 774 (1968) we found that the purpose of a requirement for specific warrants was the prevention of "a random or blanket search in the discretion of the police in violation of the Fourth Amendment to the Federal Constitution. . ." We then found that this purpose is not well-served by a strict test; *Harris, supra,* at 487, but rather we observed that:

> "There is, of course, no formula which can be used to measure the particularity with which premises must be described in a search warrant, the adequacy of such description in every case necessarily depending on the facts and circumstances there present. *Tucker v. State,* 244 Md. 488, 496. A description of a place to be searched is ordinarily sufficient if the officer with the warrant can, with reasonable effort, ascertain and identify the place intended. *Steele v. United States,* 267 U.S. 498; *Saunders v. State,* 199 Md. 568. In determining whether the description of the place to be searched meets these standards, it is permissible to look to the affidavit as well as the warrant since the affidavit is a part of the warrant and incorporated by reference therein. See *Fry v. United States,* 9 F. 2d 38 (9th Cir.). . . ." quoting *Frey v. State, supra* at 46, 237 A.2d 774 (1968).

By weighing the facts of this case against the standard set forth above, we find that the appellant's right to protection

against unreasonable searches was not violated. The record clearly discloses that the police officers who applied for and who executed the subject warrant easily identified the premises to be searched. Therefore, in the absence of allegations that the officers conducted a "dragnet" search of the apartment building, we must conclude that the purpose of the Fourth Amendment was not violated. *See Marron v. United States,* 275 U.S. 192 (1927), holding that the rationale for the warrant requirement is the limitation of police discretion.

Rather than sweeping through the building, the police officers executing the warrant for 907 East Lombard Street traveled directly to the Thomas apartment, and served the warrant on Mr. George Thomas, identified on the back of the warrant as the "suspect's father." Once inside the apartment the police found the precise items of contraband they had searched for. The success of this search "dissipated much of [the] force" of the appellant's contention. *Tucker v. State,* 244 Md. 488, 496 (1966).

The officers knew which building to enter because of the notation on the front of the search warrant. They knew which apartment to search because of the information in the attached affidavit in support of the warrant. This affidavit does not state the number of the apartment to be searched, but it adequately identifies the apartment by providing the name of the resident, Randolph Thomas, the appellant. The information cited in the affidavit is attributed to the appellant's brother, Melvin Thomas, who approached the police following the earlier arrests of Randolph Thomas for possession of a sawed off shotgun, and disorderly conduct.

The absence of a suspect's name from a search warrant, as in this case, does not make the warrant defective, *Saunders v. State,* 199 Md. 568, 575, 87 A.2d 618 (1952), because the police may learn from the warrant's affidavit the information they require to make a proper search. See *Frey, supra* at 46 in which police obtained a warrant for "an apartment house" at 2008 East Pratt Street, and identified the specific rooms by reading the names of the occupants as listed in the attached affidavit. See also *Couser v. State,* 36 Md. App. 485,

493-494, 374 A.2d 399 (1977), *aff'd on other grounds,* 282 Md. 125 (1978), in which an otherwise defective warrant was supported by the affidavit's description of premises which were specifically incorporated by reference in the warrant.

The case of *Giles v. State,* 10 Md. App. 593, 271 A.2d 766 (1970), cited by the appellant at trial, is clearly inapposite to the present case. In *Giles,* we held that a search warrant was invalid because it both failed to describe the premise to be searched, and failed to incorporate by reference an affidavit which did describe the premises. In the present case we are not concerned with the abuse of a "blank" warrant. Instead the instant case exemplifies the general rule stated in 79 C.J.S. *Searches and Seizures* § 78 (1981):

"A description of the premises to be searched, contained in a separate paper attached to and referred to in, the affidavit even though not signed, initialed or otherwise identified as a part thereof, is sufficient." citing *U.S. v. Meeks,* 313 F.2d 464 (6th Cir. 1963).

In his brief the appellant refers us to a different summary of the case law at Annot., *Search Warrant: Sufficiency or Description of Apartment or Room to be Searched in Multiple-Occupancy Structure,* 11 A.L.R. 3rd 1330, 1333, (1967), which states:

"Consonant with the general requirement that search warrants contain a particular description of the premises to be searched, a search warrant directed against a multiple-occupancy structure will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons."

The author of the above-referenced statement continues, however, and states:

"Even though a search warrant directed against a multiple-occupancy structure fails to physically de-

scribe the particular subunit to be searched, it will ordinarily not be held invalid where it adequately specifies the name of the occupant of the subunit against which it is directed." *Id.* at 1340.

Based on the foregoing analysis of the law, applied to the present case, we hold that the lower court did not err in denying the appellant's motion to suppress.

## II. *Grand Jury Testimony*

At the appellant's trial, Melvin Thomas appeared as a State's witness and testified concerning his brother's association with Michael Mebane and Darnell Williams, who were suspects in the Charlie's Bar crimes.

Melvin Thomas stated that when he questioned his brother about the crime, the appellant told him that he had "heard about" the incident.

At an immediately subsequent bench conference, the State claimed that it was surprised by the trial testimony of Melvin Thomas, and that this testimony was "substantially different" from the witness's statements to the Grand Jury, which the State produced which showed that Randolph Thomas, in response to his brother's inquiry about the incident, replied, "I got involved in some thing and the man got hurt."

Over defense objection the State was permitted to treat Melvin Thomas as a hostile witness. Defense counsel then requested to see the entire minutes of the Grand Jury. The trial court denied this request, after reviewing the testimony and finding that there was a "clear contradiction" between Melvin's testimony before the Grand Jury and his testimony before the trial court. The court did permit the defense to see relevant portions of Melvin's prior testimony before the Grand Jury for the limited purpose of cross-examination.

During subsequent direct examination, Melvin Thomas denied that his brother had admitted involvement in the Charlie's Bar crimes and attributed the information he told the Grand Jury to Michael Mebane. On cross-examination Melvin testified that the police "twisted" his statements to

them, and "threatened" him in the presence of his family. On redirect examination Melvin stated that he "had trouble" with not only the police, but also with the co-defendants and "a lot of other people", and that he had been shot, all of which he believed resulted from his cooperation with the law enforcement authorities.

On appeal Randolph Thomas contends that the trial court erred in not providing his defense counsel with the entire transcript of Melvin's Grand Jury testimony. Citing *Dennis v. United States,* 384 U.S. 855 (1966), the appellant argues that "a criminal defendant is entitled to the disclosure of grand jury testimony where he can demonstrate a 'particularized need' for the information." He believes that such a need for the complete Grand Jury testimony of Melvin Thomas was shown, and that this need outweighed the interest of the State in protecting Melvin Thomas or preserving the secrecy of the Grand Jury.

The State replies that the appellant received the portions of prior testimony relating to Melvin's prior inconsistent statement and also that the appellant waived the issue by not seeking to have the entire Grand Jury testimony introduced into evidence for identification at trial, citing *Van Meter v. State,* 30 Md. App. 406, 410, 352 A.2d 850 (1976).

From our examination of that portion of Melvin's Grand Jury testimony which was made a part of the record, and from appellant's arguments concerning his need for the entire prior testimony, we find that a "particularized need" for the additional testimony was not demonstrated. The transcript which was provided to the appellant was adequate for the defense's stated purpose of conducting an "intelligent cross-examination." No further purpose was alleged which showed an abuse of the trial court's discretion in this matter. *Sutton v. State,* 25 Md. App. 309, 314-315, 334 A.2d 126 (1975).

The appellant's contention that the State's interest in protecting Melvin Thomas had "long disappeared" by the time of trial is contradicted by what Melvin Thomas believed was the result of his cooperation with the State including his alienation and his being shot.

Based on the foregoing the trial court did not err in restricting the appellant's access to the Grand Jury testimony.

III. *Jurors*

During *voir dire* examination of the prospective jurors, the trial court asked the panel whether any of them had been a victim of the types of crimes charged in the appellant's indictment. Among others Juror No. 84 stated that several years before he had been the victim of an armed robbery, and Juror No. 258 stated that several years before she had been robbed and assaulted. Each of these jurors was asked by the trial court whether their victimization would prevent them from rendering a fair and impartial verdict in the appellant's case. Each of them responded negatively, and the court subsequently denied defense challenges for cause as to these jurors.

On appeal, Randolph Thomas submits that the trial court denied him a fair and impartial jury by the refusal to strike the two subject jurors. We disagree with the appellant's contention.

The record indicates that neither Juror No. 84, nor Juror No. 258 ultimately participated in the deliberation of the appellant's case, but rather both prospective jurors were peremptorily challenged by the defense and struck. The appellant does not contend that the trial court's failure to strike the two jurors for cause compelled him to "waste" his peremptory challenges, although he cites the case of *Tisdale v. State,* 30 Md. App. 334, 339, 353 A.2d 653 (1976) in which the court accepted such a contention.

The present case is readily distinguishable from *Tisdale, supra* by the nature of the different causes for which the various jurors were challenged. In *Tisdale* we held that jurors' admission that they would give more weight to the testimony of police officers than to the testimony of any other witness was sufficient cause for disqualification. Those two jurors were struck by peremptory challenges of the *Tisdale* defense, and we held that the trial court had "effec-

tively reduced" the defendant's alloted peremptory challenges.

The proffered cause for disqualification in the case before us does not rise to the level of *Tisdale.*

In *McCree v. State,* 33 Md. App. 82, 98, 363 A.2d 647 (1976), Judge Moylan stated that test:

"A juror may be struck for cause only where he or she displays a predisposition against innocence or guilt because of some bias extrinsic to the evidence to be presented. *Johnson v. State,* 9 Md. App. 143, 149. [262 A.2d 792 (1976)]."

In *McCree, supra* this test was applied to sustain a trial judge's decision not to strike a potential juror who knew a trial witness, but had not socialized with the witness for at least three years. The juror also informed the court that the relationship would neither influence her judgment in the case, nor affect her belief of the witness's testimony.

In *Poore v. State,* 39 Md. App. 44, 72, 384 A.2d 103 (1978), we applied the identical test of "predisposition against guilt or innocence," citing *McCree* and *Tisdale,* and sustained the striking for cause of a juror who would absolutely not consider the use of wiretap testimony by the State.

The facts of the present case, in which the two prospective jurors stated that events which occurred several years in the past would not affect their judgment, bears greater similarity to the facts of *McCree,* than to *Tisdale* and *Poore.*

Moreover, the record in the present case indicates that the appellant used only fifteen of his twenty peremptory challenges. A similar circumstance occurred in *McCree,* supra at 98, where we held that any error was therefore manifestly harmless because the appellant still had peremptory strikes available. Assuming *arguendo* that the trial court was in error in the instant case, such error, in light of McCree, was harmless beyond a reasonable doubt because there were still five peremptory strikes remaining.

IV. *Preliminary Hearing*

The appellant was arrested in the early afternoon of February 21, 1980. The next day he appeared before a District Court Commissioner and received a printed Notice of Right to Request Preliminary Hearing form. By this document the appellant learned:

> "THAT the state's attorney may elect to charge him either by way of indictment, or by criminal information;
>
> THAT if he is charged by way of indictment that indictment will not issue unless a grand jury of this State determines that probable cause exists for the issuance of such indictment;
>
> THAT if he is charged by way of criminal information the case will not be presented to the grand jury, but that he has the absolute right to a preliminary hearing by a judge of the District Court, if he requests same; and
>
> THAT he may request a preliminary hearing at the present time, or at any time within ten (10) days from the date hereof."

Underneath this text of the Notice, the document bears the signature of the commissioner, and the signature of Randolph Thomas with an adjacent notation of "Randy." In a handwriting distinct from that of the commissioner and the appellant, the Notice is captioned with the appellant's name, case number and District Court location. The same author of this caption appears to have also added the date "2/22/80" after the commissioner's signature, and after that portion of the Notice which says, "I hereby request a Preliminary Hearing, and the date of this request is _____." The printed box preceding this request is not checkmarked, neither is the box of the subsequent sentence which states, "I have requested that a preliminary hearing be held on _____. . . . ." The blank space for this latter sentence was filled in by the same distinct hand, with the date "3/14/80 [at] 9 [o'clock] A.M. at 5710 Eastern Ave. . . . ."

On March 14, 1980 Randolph Thomas did not receive a preliminary hearing but rather on that date the Grand Jury for Baltimore City filed an indictment in the case against the appellant. By a motion to dismiss this indictment, filed at the commencement of his trial, the appellant challenged the constitutionality of Md. Code Art. 27, § 592, by which, he contended, the State denied him a preliminary hearing and denied him due process of law.

This Code section provides in pertinent part:

> "In any case where the defendant has been charged with a felony, other than a felony within the jurisdiction of the District Court, the defendant shall be advised by the court or court commissioner, at the time of the initial appearance required by the Maryland District Rules, of his right to request a preliminary hearing. The defendant may make that request at the time of the initial appearance or at any time within ten days thereafter. If the defendant fails to request a preliminary hearing within the ten-day period, it is waived.
>
> \* \* \*
>
> If the state's attorney elects to charge the accused by grand jury indictment, the preliminary hearing is not a matter of right to the defendant but may be afforded in the court's discretion. A preliminary hearing is not a matter of right in any other case, but may be afforded in any case in the court's discretion, upon motion of the state's attorney or the defendant."

At a hearing on the motion to dismiss, the appellant introduced into evidence the Notice of Right to Request Preliminary Hearing form, which he identified as "my request for right to preliminary hearing." He told the court that he signed the document and did not "give up the right to a preliminary hearing."

On cross-examination the appellant, Mr. Thompson (the prosecutor), Mr. Scherr (defense counsel), and the court engaged in the following colloquy:

"BY MR. THOMPSON:

Q Mr. Thomas, you have already identified this as the preliminary hearing form that you signed, is that correct?

A Yes.

Q Now, read this one line to me right here.

A I hereby request a preliminary hearing.

Q You see a box next to it to be checked?

A Yes.

Q Did you check that box? Is there any mark on that box at all?

A No, it's not.

MR. THOMPSON: Thank you. I have no further questions, Your Honor.

MR. SCHERR: Nothing further.

THE COURT: Let me have that, please. I may have a question of the Defendant also. I would ask the Clerk to show this exhibit to the Defendant, Mr. Thomas. I would call your attention, Mr. Thomas, to that line which the State's Attorney just showed you where it says, I hereby request the preliminary hearing, the date of this request is, and there is a box there that you state you did not check. Now, I note on that line it has 2/22/80, it looks like, and it appears to me that that date of 2/22/80 was placed there by the Court Commissioner, who filled out all the other forms. I want to make sure that's not your handwriting there. Show him where I mean, Mr. Clerk.

THE CLERK: (Indicating)

THE COURT: That's not your handwriting, is it?

A No, this is not my handwriting.

THE COURT: All you did on that form, as I would gather, is sign it at the bottom, is that correct, sir?

A No, it was understood by the Commissioner who issued this to me saying that if I signed this, I would be getting a preliminary hearing within three days and then when I went, I believe I heard at the Police Station while I was waiting for my preliminary hearing I never got, I just never got none."

Based on the appellant's testimony and the documentary evidence, the trial court found that Randolph Thomas had been notified of his right to a preliminary hearing, but that he had not requested a preliminary hearing, and had thereby waived the opportunity for such a hearing under Md. Code Art. 27 § 592. The appellant's motion to dismiss was denied.

On appeal Thomas renews his challenge to Section 592, contending that it creates "a dichotomy between those charged by indictment and those charged by information." While citing no Maryland authority supporting the proposition that such a dichotomy is unconstitutional, the appellant refers us to the Court of Appeals decision in *Crawford v. State,* 282 Md. 210, 383 A.2d 1097 (1979).

In *Crawford, supra* the Court of Appeals affirmed the criminal conviction of an appellant who argued that the trial court unconstitutionally admitted into evidence at trial testimony presented at his preliminary hearing. These facts are clearly distinguishable from those of the present case, but both the appellant and the appellee find support in the dictum of Chief Judge Murphy:

"While there is no constitutional right to a preliminary hearing, the accused is entitled to such a hearing by statute, if, as here, he makes a timely request for it." *Id.* at 220-221

In the present case there is a finding by the lower court, that the appellant waived his right to a preliminary hearing, having reviewed the record, and in the lengthy oral opinion of the trial judge, we find that his decision was supported by the evidence, and was not erroneous. Md. Rule 1086, *Bell v. State,* 286 Md. 193, 200, 406 A.2d 909 (1979).

Even if the appellant had effectively requested a preliminary hearing, the trial court could have found that the appellant's rights were adequately protected by the Grand Jury process. The court could have then exercised its discretion and denied the requested preliminary hearing. *Marshall v. State,* 46 Md. App. 695, 697, 420 A.2d 1266 (1980), *rev'd on other grounds,* 291 Md. 205, 434 A.2d 555 (1981).

### V. *Other Crimes Question*

During the prosecutor's cross-examination of the appellant at trial the following colloquy occurred:

"Q Mr. Thomas, do you know a boy named Apple?
A Apple?
Q Apple.
A I don't know, I might. I don't know.
Q As a matter of fact, you stole that shotgun from Apple, didn't you?
MR. SCHERR: Objection.
THE COURT: Overruled.
A No."

The appellant contends that "the interjection into the case of this phantom offense carried a high risk of prejudice" which constituted reversible error. We disagree because the answer was in the negative and was harmless beyond a reasonable doubt.

### VI. *Jury Instruction*

The appellant next contends that the trial court erred in instructing the jury that the police conducted a "valid, authorized entry" of the appellant's residence pursuant to a search warrant, even though the warrant was not introduced into evidence. The appellant believes that the court's remark could have conveyed to the jury an impression that the court considered the seized evidence to be entitled to greater weight than other evidence, or could have indicated that the court thought that Thomas was guilty of the crimes.

To determine whether a trial court's comments constitute an error, the substance of the comments is examined for indications of unfairness, partiality, or impropriety by the court. *Coby v. State,* 225 Md. 293, 296-297, 170 A.2d 199 (1961).

The record of the present case reveals the context in which the trial court made its remark. At the start of the trial the court had denied appellant's motion to suppress evidence seized pursuant to a search and seizure warrant. During the trial the State attempted to introduce into evidence the search warrant for the appellant's residence. The defense objected and at a bench conference, reminded the court that the warrant listed items that the police sought but did not find. The prosecutor replied that he needed the warrant as evidence of the officer's authority for the search. The trial court sustained the defense objection, finding that the validity of the police action was undisputed, and the judge informed the jury of this very reason for sustaining the objection.

A virtually identical situation occurred in *Meyer v. State,* 43 Md. App. 427, 444-445, 406 A.2d 427, *cert. denied,* 286 Md. 750 (1979), *U.S. cert. denied,* 446 U.S. 938 (1980). In that case we held that a trial court did not err in providing a jury with a "compromise" instruction explaining why the court had sustained a defense objection to the introduction of an incriminating search warrant.

In the present case, the State's proffer of the warrant was certainly unnecessary in light of the favorable ruling for the State at the suppression hearing.

The trial court was therefore correct in sustaining the objection to the warrant and thereby preventing prejudice to the defendant. The court's remark on its ruling, coming as it did prior to the introduction of the seized evidence, may have served to dispel the jury's questions about the search, and clearly did not usurp the jury's role in weighing the evidence, *Meyer, supra* at 445. We cannot say that the court acted unfairly or improperly.

## VII. *Deliberation Documents*

As his penultimate contention the appellant challenges the trial court's refusal to permit the jury to use during its deliberation various written instructions concerning the burden of proof and the presumption of innocence. Instead the trial court only permitted the jurors to use instructions, provided for them concerning the law of the substantive crimes. The trial judge informed counsel of his belief that the additional matters were "much more readily understood when delivered orally. . . ."

Citing the Court of Appeals decision in *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980), the appellant argues that the trial court infringed on his constitutional protections by "highlighting" certain areas of the law, and "deemphasizing" other areas. The short answer to this contention is that Md. Rule 757e subjects to the approval of the trial court the deliberating jury's use of written instructions.

Having reviewed the case law and the record we cannot say that the trial court abused its discretion in limiting the written instructions provided to the jurors.

## VIII. *Prosecutor's Argument*

In his closing argument to the jury the prosecutor did not discuss the substance of Melvin Thomas's testimony, but only reminded the jury that they had heard both Melvin's trial testimony, and had been informed of his Grand Jury statements. Defense counsel subsequently argued to the jury that Melvin Thomas was a "victim" of the police and the State's Attorney office, who tried to "expose the distortion and deception" of the State's Attorney's office.

Responding to this argument the assistant State's attorney was permitted, over objection and motion for mistrial, to inform the jury that he spoke with Melvin Thomas three or four times prior to the trial. According to the prosecutor's rebuttal, on those prior occasions, Melvin Thomas assured him that he would provide the same testimony at trial as he had before the Grand Jury.

The trial judge overruled the defense objections, finding that the prosecutor explained why Melvin Thomas was a hostile witness, and why the prosecutor anticipated certain testimony from Melvin.

On appeal Randolph Thomas contends that the trial court committed prejudicial error in permitting the prosecutor to argue from facts not admitted into evidence. The appellee replies that the prosecutor only corrected the statements of the defense counsel, and even if improper, the remark was not grounds for reversal, citing *James v. State,* 31 Md. App. 666, 681, 358 A.2d 595, *cert. denied,* 278 Md. 725 (1976).

Our examination of the record and applicable case law compels us to agree with the State. In *James, supra* we affirmed a murder conviction and found no error in the trial court's failure to grant a mistrial despite a prosecutor's dramatic and improper references to the victim's wounds. We relied on the Court of Appeals decision in *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974), and applied the standard that the denial of a mistrial motion is not reversible unless the defendant is clearly prejudiced. *James, supra* at 680.

In *Wilhelm, supra* at 413 the Court of Appeals discussed the role of the trial judge in supervising counsel's closing arguments:

"As a limitation upon the general scope of permissible closing argument this Court in *Esterline v. State,* 105 Md. 629, 66 A. 269 (1907), cautioned that counsel should not be permitted by the court, over proper objection, to state and comment upon facts not in evidence or to state what he could have proven. Persistence in such course of conduct may furnish good grounds for a new trial. The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an *abuse of discretion* by the trial judge of a char-

acter likely to have injured the complaining party. 105 Md. at 637, 66 A.2d at 272."

The prosecutor's argument that Melvin had previously told him three or four times that he would testify at trial as he had before the Grand Jury was not proper closing argument. The trial judge abused his discretion in allowing the prosecution to proceed with that argument over the appellant's objection; however, this abuse of discretion was not likely to have injured the appellant because the content of the prosecutor's remark was information that could have clearly been inferred from the testimony of the witness both as to content and the procedure in obtaining it. *Wilhelm, supra.*

No prejudice to Randolph Thomas has been shown and attributed to the prosecutor's remark, and we hold that no reversible error was committed by the trial court.

*Judgment affirmed.*
*Appellant to pay costs.*