## JOHN THOMAS CRAWFORD v. STATE OF MARYLAND

[No. 85, September Term, 1977.]

*Decided March 27, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The sixth amendment right of an accused in a criminal case to confront the witnesses against him is a fundamental constitutional right made obligatory on the states by the fourteenth amendment to the federal constitution.[1] *Dutton v. Evans,* 400 U. S. 74, 91 S. Ct. 210, 27 L.Ed.2d 213 (1970); *Pointer v. Texas,* 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965). The same right is secured by Art. 21 of the Maryland Declaration of Rights.[2] *State v. Collins,* 265 Md. 70, 288 A. 2d 163 (1972). The issue presented in this case is whether the appellant Crawford was denied his constitutional right of confrontation when testimony of the prosecuting witness, given at a preliminary hearing, was received in evidence over his objection at his subsequent trial after it had been established that the witness was unavailable to testify.

Fourteen-year-old Cheryl Adams was beaten, shot in the head and abandoned on a highway in Washington County on September 22, 1975. Crawford was arrested later that day at his father-in-law's home in Cumberland and charged with assaulting Cheryl with intent to murder her. A revolver

---

1. The sixth amendment provides in part:

   "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; ...."

2. Art. 21 provides in part:

   "That in all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him; ... to examine the witnesses for and against him on oath; ...."

containing one spent round of ammunition was found in Crawford's Ford XL automobile, together with Cheryl's birth card. Crawford told one officer on the night of his arrest that he had driven from his home in Washington, D.C. earlier that day bound for Cumberland and that Cheryl and her boyfriend, whose name he did not know, accompanied him in his car. He told the officer that he had stopped at a gasoline station to get some cigarettes and when he returned to his car, Cheryl and her boyfriend had disappeared. The next day Crawford told another officer that Cheryl's boyfriend was named Robert Rogers, and that he had accompanied them on the trip, but a disagreement developed between Cheryl and Rogers and they left the car. The only description of Rogers given to the officer by Crawford was that he was a black male. Police efforts to locate Rogers through Cheryl's mother and landlord and Crawford's family were unsuccessful.

Shortly after his arrest, Crawford, through counsel, requested a preliminary hearing. *See* Maryland Code (1957, 1976 Cum. Supp.) Art. 27, § 592. It was not until December 19, 1975 — almost three months after the offense was committed — that the preliminary hearing was held. Cheryl appeared as a witness for the State. She testified under oath that she lived in Washington, D.C. and had known Crawford for about three years. She said that on September 22, 1975, she accompanied him in his car on a trip; that Crawford told her he wanted to stop at a place in Cumberland and needed her help to get some TV sets; that during the trip Crawford "got real quiet," stopped the car, put a gun in his waistband, and directed her to stand on a hill and look toward their destination. Cheryl recounted that Crawford thereafter struck her from behind, shot her in the head, and then drove away. She said that she was alone in the car with Crawford during the entire trip.

On cross-examination, Crawford's counsel asked Cheryl whether it was correct that "There were only two people in the car during the entire trip." She answered in the affirmative. He then asked Cheryl whether she knew "a man by the name of Robert Rogers"; she said that she did not. He next asked whether she ever heard her family "or anybody

in your area talk of a man named Robert Rogers"; she said that she had not. Further cross-examination revealed that Cheryl had been away from home for approximately six or seven months, living with Crawford whom she had known for approximately three years. Other questions were asked on Cheryl's cross-examination concerning her family, where she lived, and the events of the day of the crime.

Following the preliminary hearing, Crawford was indicted for assault with intent to murder. At the trial before a jury in the Circuit Court for Washington County, the State adduced evidence showing that Cheryl was unavailable to testify. Over Crawford's objection, the State was permitted to introduce Cheryl's preliminary hearing testimony in evidence.

After his motion for a judgment of acquittal was denied, Crawford testified that he was driving Cheryl to Cumberland on September 22, 1975 to live with his relatives. He said that en route they picked up Cheryl's boyfriend, whose nickname he then knew to be "Prees" and whose first or last name was Rogers. He said that Prees did not want Cheryl to go to Cumberland; an argument ensued, and Prees was told to leave the car. A scuffle followed, during which Crawford took Prees' gun from him and threw it away. Crawford testified that Cheryl left the car with Prees and he drove on alone. Shortly thereafter, he decided to return and look for Cheryl. He saw Prees on the highway but Cheryl was not with him. He picked up Prees and together they looked for Cheryl, but did not find her. Crawford gave Prees $22 and told him to go back to Washington. Crawford then drove alone to Cumberland.

The State attempted to impeach Crawford's credibility by showing that he had an extensive and serious criminal record. No other witnesses testified on Crawford's behalf and the jury found him guilty of assault with intent to murder.

Crawford appealed on the ground that Cheryl's preliminary hearing testimony was improperly admitted into evidence at trial in violation of his constitutional right to confront the witnesses against him. The Court of Special Appeals, in an opinion by Judge W. Albert Menchine, extensively reviewed

the authorities and concluded that the confrontation clause had not been violated. *Crawford v. State,* 37 Md. App. 1, 375 A. 2d 240 (1977). We granted certiorari to consider the important constitutional issue raised in the case.

It is the primary object of the constitutional provision requiring confrontation to prevent depositions or ex parte affidavits from being used against a person accused of crime in lieu of a personal examination and cross-examination of the witnesses. *Barber v. Page,* 390 U. S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968); *Mattox v. United States,* 156 U. S. 237, 15 S. Ct. 337, 39 L. Ed. 409 (1895). The primary interest secured by the confrontation clause is the right of cross-examination; an adequate opportunity for cross-examination, therefore, may satisfy the clause in the absence of physical confrontation. *Douglas v. Alabama,* 380 U. S. 415, 85 S. Ct. 1074, 13 L.Ed.2d 934 (1965); *Pointer v. Texas,* 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965). In the words of Dean Wigmore, "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*" so that where there has been due cross-examination there has been a confrontation. 5 J. Wigmore, *Evidence* §§ 1395, 1396 (Chadbourn rev. 1974) (emphasis in original).

Consistent with these principles, we have recognized that "the right of confrontation is generally not violated when the accused has been given a prior opportunity to cross-examine the witnesses whose testimony is to be used against him." *State v. Collins,* 265 Md. 70, 288 A. 2d 163 (1972).

Our predecessors have consistently held that testimony taken at a former trial may as a general rule be admitted at a subsequent trial where it is satisfactorily shown that the witness is unavailable to testify. *Contee v. State,* 229 Md. 486, 184 A. 2d 823 (1962); *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955); *Hendrix v. State,* 200 Md. 380, 90 A. 2d 186 (1952). These cases generally recognize that where an opportunity was afforded to the accused to cross-examine the witness at the former trial, there is no violation of the state or federal constitutional right of confrontation. The rule has generally been applied without distinction between the admissibility of

testimony given at a former trial and testimony given at a preliminary hearing since, as Professor McCormick states:

> "If the accepted requirements of the administration of the oath, adequate opportunity to cross-examine on substantially the same issue, and present unavailability of the witness, are satisfied then the character of the tribunal and the form of the proceedings are immaterial, and the former testimony should be received. . . ." McCormick, *Evidence* § 258 (2d ed. 1972).

Other text writers are in accord. *See* 2 *Jones on Evidence* § 9.22 (6th ed. 1972); 3 *Wharton's Criminal Evidence* § 650 (13th ed. 1973). The use of preliminary hearing testimony of an unavailable witness at a subsequent trial has been consistently held not to infringe upon the constitutional right of confrontation as long as there has been due cross-examination. *See, e.g., Government of Virgin Islands v. Aquino,* 378 F. 2d 540 (3d Cir. 1967); *Butler v. Wilson,* 365 F. 2d 308 (9th Cir. 1966); *People v. Rojas,* 125 Cal. Rptr. 357, 542 P. 2d 229 (1975); *People v. Fink,* 552 P. 2d 529 (Colo. App. 1976); *Richardson v. State,* 247 So. 2d 296 (Fla. 1971); *People v. Horton,* 65 Ill. 2d 413, 358 N.E.2d 1121, 3 Ill. Dec. 436 (1976); *State v. Washington,* 206 Kan. 336, 479 P. 2d 833 (1971); *State v. Ford,* 336 So. 2d 817 (La. 1976); *Commonwealth v. Mustone,* 353 Mass. 490, 233 N.E.2d 1 (1968); *State v. Jacob,* 222 N.W.2d 586 (N.D. 1974); *Smith v. State,* 546 P. 2d 267 (Okl. Cr. App. 1976); *Commonwealth v. Clarkson,* 438 Pa. 523, 265 A. 2d 802 (1970); *Raley v. State,* 548 S.W.2d 33 (Tex. Cr. App. 1977); *Fisher v. Com.,* 217 Va. 808, 232 S.E.2d 798 (1977); *State v. Roebuck,* 75 Wash. 2d 67, 448 P. 2d 934 (1968).

The Supreme Court has generally recognized the admissibility in a criminal trial of prior recorded testimony of an unavailable witness since at least 1895. In *Mattox v. United States,* 156 U. S. 237, 15 S. Ct. 337, 39 L. Ed. 409 (1895), the Court held that testimony given at a former trial was admissible at a subsequent trial of the same case where the witness died in the intervening period. Rejecting the argument that the accused's right of confrontation had been

abridged, it said that the authority in favor of admitting former testimony "where the defendant was present either at the examination of the deceased witness before a committing magistrate, or upon a former trial of the same case, is overwhelming." 156 U. S. at 241. It said that "[t]he substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." *Id.* at 244. In *Motes v. United States,* 178 U. S. 458, 20 S. Ct. 993, 44 L. Ed. 1150 (1900), the Court, while denying admissibility of former testimony because the witness' unavailability was due to the government's negligence, cited with approval a treatise stating that testimony given before an examining magistrate would be admissible at the subsequent trial if there had been an opportunity to cross-examine the witness at the preliminary hearing, and the witness was shown to be unavailable to testify. *See also West v. Louisiana,* 194 U. S. 258, 24 S. Ct. 650, 48 L. Ed. 965 (1904).

In *Pointer v. Texas,* 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965), the Court held that use at trial of preliminary hearing testimony of an unavailable witness was improper where the accused had been without counsel at the preliminary hearing and did not cross-examine the witness. It observed, however, that the case would have been different had the preliminary hearing testimony of the unavailable witness "been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." 380 U. S. at 407.

In *Barber v. Page,* 390 U. S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court again recognized that the right of cross-examination initially afforded at a prior judicial hearing may provide substantial compliance with the purposes underlying the confrontation requirement. In the circumstances of that case, the Court purported to recognize a distinction between the opportunity to cross-examine afforded at trial and at a preliminary hearing. There, Barber and an accomplice, Woods, were represented at the

preliminary hearing by the same attorney. When Woods decided to testify against Barber, the attorney withdrew his representation of Woods but continued to represent Barber. He did not, however, question or cross-examine Woods at the preliminary hearing. At Barber's subsequent trial, the State sought to introduce Woods' preliminary hearing testimony on the ground that he was unavailable to testify. The Court held that Woods' unavailability had not been established and for that reason concluded that the prior testimony was improperly admitted. It observed that Barber's failure to cross-examine Woods in such circumstances did not constitute a waiver of the right to confrontation, and that in any event the result would not have been different had Woods been cross-examined at the preliminary hearing. It said, in dicta:

> "The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case." 390 U. S. at 725-26.

Justification for holding that the cross-examination of a witness at a preliminary hearing satisfied constitutional confrontation requirements was found to exist in *California v. Green,* 399 U. S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970). There, preliminary hearing testimony was admitted into evidence where the witness was unable or unwilling to remember at trial the events about which he had testified at the preliminary hearing. The Court concluded that in the circumstances the witness was "unavailable" at trial and that

his preliminary hearing testimony was admissible. It held that the witness' testimony at the preliminary hearing "had already been given under circumstances closely approximating those that surround the typical trial." 399 U. S. at 165. It observed that the witness was under oath at the preliminary hearing; that the defendant was represented by counsel; that counsel had every opportunity to cross-examine the witness; and that the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearing. The Court, in this context, said:

"This Court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause. *Mattox v. United States,* 156 U. S. 237 (1895). That case involved testimony given at the defendant's first trial by a witness who had died by the time of the second trial, but we do not find the instant preliminary hearing significantly different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause. Indeed, we indicated as much in *Pointer v. Texas,* 380 U. S. 400, 407 (1965), where we noted that '[t]he case before us would be quite a different one had [the unavailable witness'] statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine.' And in *Barber v. Page,* 390 U. S. 719, 725-726 (1968), although noting that the preliminary hearing is ordinarily a less searching exploration into the merits of a case than a trial, we recognized that 'there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable . . . .' " 399 U. S. at 165-66.

The Court held ultimately that the accused's counsel was not "significantly limited in any way in the scope or nature of his

cross-examination of the witness ... at the preliminary hearing," and that the preliminary hearing testimony was admissible because "the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement...." *Id.* at 166.

In determining whether the accused's constitutional right to confrontation had been satisfied so as to justify the use of testimony of an unavailable witness given at an earlier judicial proceeding, the Court in *Mancusi v. Stubbs,* 408 U. S. 204, 92 S. Ct. 2308, 33 L.Ed.2d 293 (1972), said that the focus of its concern has been to insure that there are "indicia of reliability" associated with the former testimony so as to afford the trier of fact a satisfactory basis for evaluating its truth. In that case, the prosecution at a retrial introduced the testimony of an unavailable witness given at the first trial some nine years earlier. The Court observed that before it could be said that the accused's constitutional right to confrontation was not infringed, "the adequacy" of the witness' examination at the prior trial must be taken into consideration. In finding no constitutional error in permitting the prior recorded testimony in evidence, the Court said that since "there was an adequate opportunity to cross-examine [the witness] at the first trial, and counsel ... availed himself of that opportunity, the transcript of [the unavailable witness'] testimony in the first trial bore sufficient 'indicia of reliability' and afforded ' "the trier of fact a satisfactory basis for evaluating the truth of the prior statement." ' " 408 U. S. at 216.

The "indicia of reliability" test referred to in *Mancusi* originated in *Dutton v. Evans,* 400 U. S. 74, 91 S. Ct. 210, 27 L.Ed.2d 213 (1970). In *Dutton,* the defendant was charged with murder. A state witness testified at the trial that the defendant's accomplice told him, in effect, that the defendant was responsible for the crime. The admissibility under the confrontation clause of that hearsay statement incriminating the defendant was there in issue; the case did not involve the use of former testimony given by an unavailable witness at an earlier judicial proceeding. The Court concluded that notwithstanding the lack of confrontation of the declarant the

confrontation clause had not been violated because the circumstances under which the testimony was obtained and given at trial presented sufficient indicia of reliability to make the out-of-court statement trustworthy. The Court said that its decisions "make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement,'" citing *California v. Green,* 399 U. S. at 161. 400 U. S. at 89.

Crawford argues that testimony taken at a preliminary hearing may be admitted only in exceptional cases where "indicia of reliability" are present to afford the trier of fact a satisfactory basis for evaluating the truth of the testimony. Relying upon *Barber v. Page, supra,* Crawford maintains that the right of confrontation is basically a trial right and that a preliminary hearing is a much less searching exploration into the merits of a case, its function being limited to determining whether probable cause exists to hold the accused for trial. Crawford argues that while the accused may be afforded an opportunity for cross-examination at a preliminary hearing, it is totally unrealistic to assume that he would question a witness as vigorously and thoroughly as he would before the ultimate fact finder. He contends that the jury in his case had no satisfactory basis for evaluating the truth of Cheryl's testimony. He claims that her cross-examination at the preliminary hearing was perfunctory at best, that her testimony on direct examination at that hearing was not challenged nor was her credibility sought to be impeached. In view of these facts, Crawford suggests that the cross-examination was not adequate and since Cheryl's testimony was devoid of any "indicia of reliability," it was improperly admitted into evidence.

The basic purpose of the preliminary hearing in Maryland is to determine whether the accused should be held for action of the Grand Jury or charged by the State's Attorney on information. *Arrington v. Warden,* 232 Md. 672, 195 A. 2d 38 (1963); *Kochel v. State,* 10 Md. App. 11, 267 A. 2d 755 (1970). While there is no constitutional right to a preliminary hearing,

the accused is entitled to such a hearing by statute if, as here, he makes a timely request for it. Code, Art. 27, § 592. When held, the hearing is deemed a critical stage of the State's criminal justice process. *Coleman v. Alabama,* 399 U. S. 1, 90 S. Ct. 1999, 26 L.Ed.2d 387 (1970). In *Coleman,* the Supreme Court recognized the importance of cross-examination at the preliminary hearing. It said that a skilled cross-examination of the State's witnesses could expose fatal weaknesses in the prosecution's case and result in the refusal of the judicial officer to hold the accused for trial; it also observed that cross-examination at the preliminary hearing could provide a vital impeachment tool for use at the trial. The right to cross-examination afforded the accused at a preliminary hearing is, therefore, hardly an empty exercise particularly where the preliminary hearing is held at the accused's own instance.

It is true, of course, that there are differences between a preliminary hearing and a trial. Since the State's aim at the preliminary hearing is merely to make out a prima facie case, the cross-examination of the State's witnesses is not ordinarily as extensive as at trial. But as the Supreme Court intimated in *California v. Green, supra,* these differences in themselves do not, for purposes of the confrontation clause, warrant exclusion of the testimony taken at a preliminary hearing. The basic concern is for the reliability of the testimony which was elicited at the preliminary hearing, a concern which is not affected by the scope or focus of the proceeding. *State v. Jacob,* 222 N.W.2d 586 (N.D. 1974); *Commonwealth v. Clarkson,* 438 Pa. 523, 265 A. 2d 802 (1970).

The preliminary hearing and the trial share as common features the administration of an oath to the witnesses, representation of the accused by counsel, the right to cross-examine as fully as at trial, and the recording of the proceedings. Like the trial, the preliminary hearing is distinctly adversary, *Fisher v. Com.,* 217 Va. 808, 232 S.E.2d 798 (1977), and can properly be viewed as a full-fledged judicial hearing, *Pointer v. Texas, supra,* with testimony

being adduced under conditions closely approximating those that surround the typical trial, *California v. Green, supra.*

Crawford does not question Cheryl's actual unavailability to testify at the trial; indeed, the evidence clearly supports that fact. The issue, therefore, is simply whether the transcript of Cheryl's testimony at the preliminary hearing carried sufficient indicia of reliability to afford the jury a satisfactory basis for evaluating the truth of her evidence. We think it did.

The safeguards present at Crawford's preliminary hearing were akin to those prevailing at trial. Cheryl testified under oath before a judicial officer and Crawford had a full opportunity, which he exercised, to cross-examine her. Almost three months transpired from Crawford's arrest to the preliminary hearing and he was represented by counsel throughout this period, with ample opportunity to prepare for the hearing which he had requested. Counsel's cross-examination of Cheryl focused on the central issue — the identification of her assailant — and questioned whether there wasn't a third person in Crawford's car when the offense was committed, and whether his name was Rogers. It may have been that the cross-examination could have been more vigorous, or contrariwise that Crawford was content to obtain a simple denial from Cheryl that she knew Rogers, or that a third person was in the car during the trip. The fact is, however, that the cross-examination was not significantly limited in scope or nature. Because it may not have been as penetrating or as effective, in the final analysis, as Crawford may now wish it had been does not mean that the cross-examination was inadequate for purposes of the confrontation clause.

Taking all factors into account, including the adequacy of the cross-examination, *Mancusi v. Stubbs, supra,* and particularly considering that Cheryl's testimony in this case was given under circumstances closely approximating those that surround the typical trial, *California v. Green, supra,* with no curtailment of the right of cross-examination, we find

no error in permitting the use of the transcript in evidence. We recognize in so concluding that it would certainly have been more desirable to have the witness present at the trial, but it would be vastly less desirable to exclude such evidence altogether. *See Commonwealth v. Clarkson,* 438 Pa. 523, 265 A. 2d 802 (1970).

> *Judgment affirmed; costs to be paid by appellant.*