846 A.2d 36

**Michael Conway SNOWDEN**

v.

**STATE of Maryland.**

**No. 2933, Sept.Term, 2002.**

Court of Special Appeals of Maryland.

April 5, 2004.

Jennifer Lyman (Community Legal Clinics, George Washington University Law School, on brief), Washington, DC, for appellant.

Devy Patterson Russell (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before MURPHY, C.J., KENNEY, and ADKINS, JJ.

MURPHY, C.J.

In the Circuit Court for Montgomery County, Michael Conway Snowden, appellant, was convicted of seven counts of child abuse and related offenses.[1] Appellant now presents three questions for our review:

I. DOES § 11–304 OF MARYLAND'S CRIMINAL PROCEDURE ARTICLE VIOLATE THE REQUIREMENTS OF THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 21 OF THE MARYLAND DECLARATION OF RIGHTS?

II. DID THE TRIAL COURT ERR IN ALLOWING THE ADMISSION OF A SOCIAL WORKER'S

---

1. The convictions consisted of one count of child abuse against Tiffany P. in violation of § 3–601 of the Maryland Criminal Law Article, MD.CODE ANN., CRIM. § 3–601 (2002) (formerly art. 27, § 35C), three counts of third degree sexual offense against Tiffany P. in violation of § 3–307 of the Criminal Law Article, MD.CODE ANN., CRIM. § 3–307 (2002) (formerly art. 27, § 464B), one count of third degree sexual offense against Raven H., and two counts of third degree sexual offense against Megan H.

HEARSAY STATEMENTS TO REPLACE THE TESTIMONY OF THE COMPLAINANTS PURSU-ANT TO § 11–304?

III. **WAS THERE SUFFICIENT EVIDENCE BEFORE THE TRIAL COURT TO ESTABLISH THAT AP-PELLANT TOUCHED THE COMPLAINANTS FOR THE PURPOSE OF SEXUAL AROUSAL?**

 For the reasons that follow, we hold that the introduction of a testimonial hearsay statement made by an available witness who does not testify violates the Confrontation Clause of the United States Constitution[2] and Article 21[3] of the Maryland Declaration of Rights (MDR).[4] We therefore vacate the judgment of the circuit court, and remand for further proceedings consistent with this opinion.

## Background

The State presented evidence that appellant committed the offenses in January of 2002, when two of the alleged victims were ten years of age and the third alleged victim was eight. The children's account of what occurred was presented through the testimony of Ms. Abdul–Wakeel, a licensed social worker employed by the Child Protective Services Division of the Montgomery County Department of Health and Human Services.[5] Prior to the trial, the State filed a motion to substitute the social worker's testimony for that of the chil-

---

2. *See* U.S. Const amend. VI.

3. *See* Md Const art. 21.

4. Issues of law and mixed questions of law and fact are reviewed *de novo*. *Bond v. State*, 142 Md.App. 219, 227, 788 A.2d 705 (2002). We therefore apply the *de novo* standard of review to the issue of whether the Confrontation Clause was violated in this case.

5. Appellant and his girlfriend were living with the mother of one of the alleged victims. One day in late January, the complainants (Tiffany, Megan, and Raven) told Tiffany's older sister that appellant had touched them inappropriately. The older sister advised the girls to tell their mothers, which they did. The mothers called the police. Eleven days later, Ms. Amira Abdul–Wakeel interviewed the girls.

dren,[6] invoking MD.CODE ANN., CRIM. PROC. § 11–304 (2002) (hereinafter CP 11–304), which statute, also referred to as the tender years statute,[7] in pertinent part, provides:

(a) *"Statement" defined.*—In this section, "statement" means:

(1) an oral or written assertion; or

---

**6.** The motion stated: "[T]he State of Maryland ... moves this Honorable Court to introduce statements under Criminal Procedure Section 11–304, and for reasons therefore states:

1. That the victims in the above-referenced cases are under 12 years old;

2. That the victim made a statement to Amira Abdul–Wakeel, a social worker while acting in the course of her profession;

3. That the contents of the statement have been provided in discovery and are attached to this notice;

4. That the State intends to introduce the statements at trial."

**7.** Although at least forty states have tender years statutes, no other state allows the statements to be admitted regardless of whether the child testifies. Twenty-seven states require a child to either testify at trial (sometimes by closed circuit TV) or be declared unavailable to testify. ALA.CODE § 15–25–32 (2003); ARIZ.REV.STAT. ANN. § 13–1416 (2003); CAL EVID.CODE § 1228 (2003); COLO.REV.STAT. ANN. § 13–25–129 (2003); DEL CODE ANN. tit. 11, § 3513 (2003); FLA. STAT. ANN. § 90.803(23) (2003); HAW. R. EVID. 804(b)(6) (2003); IDAHO CODE § 19–3024 (2003); 725 ILL. COMP. STAT ANN 5/115–10 (2003); IND.CODE ANN § 35–37–4–6 (2003); KAN. STAT. ANN. § 60–460(dd) (2003); MASS. GEN. LAWS ANN. ch. 233, § 81 (2003); MINN.STAT. ANN. § 595.02(3) (2003); MISS. R. EVID. 803(25) (2003); MO.REV.STAT. § 491.075 (2003); NEV REV.STAT ANN. § 51.385 (2003); N.J. R. EVID. 803(27) (2003); N.D. R. EVID 803(24) (2003); OHIO REV.CODE ANN. EVID. 807 (2003); OR. R. CT. 803(18a) (2003); 42 PA. CONS.STAT ANN. § 5985.1 (1997); S.C.CODE ANN. § 19–1–180 (2003); S.D. CODIFIED LAWS § 19–16–38 (2003); TENN. R. EVID. 803(25); VA.CODE ANN. § 63.2–1522 (2003); WASH REV.CODE ANN. § 9A.44–120 (2003).

Michigan requires that the child testify before the statement is admitted. MICH. R. EVID. 803A (2003). Maine requires that (1) the child be unavailable at trial, and (2) upon motion of the other party, the statement be given under oath, subject to all rights of Confrontation secured to an accused by the Constitution of Maine and the United States Constitution. ME.REV STAT ANN tit. 15, § 1205 (2003).

Other states require that the child either be available to testify at trial or be unavailable. IOWA CODE ANN. § 232.96 (2003); N.H.REV.STAT. ANN. § 516:25a (2003); OKLA. STAT. ANN. tit. 12, § 2803.1 (2003); R.I. GEN LAWS § 14–1–69 (2003); UTAH CODE ANN. § 76–5–411 (2003); N.Y. FAM. CT. ACT. § 1046 (2003). Still others require the child to either testify or be available to testify at trial. ALASKA STAT. § 12.40.110 (2003); ARK R. EVID. 803(25) (2003); GA.CODE ANN. § 24–3–16 (2003); TEX.CODE CRIM. P. ANN. art. 38.072 (2003); VT. R. EVID. 804a(a) (2003).

(2) nonverbal conduct intended as an assertion, including sounds, gestures, demonstrations, drawings, and similar actions.

(b) *Admissibility.*—Subject to subsections (c), (d), and (e) of this section, the court may admit into evidence in a juvenile court proceeding or in a criminal proceeding an out of court statement to prove the truth of the matter asserted in the statement made by a child victim who:

(1) is under the age of 12 years; and

(2) is the alleged victim or the child alleged to need assistance in the case before the court concerning:

(i) child abuse under Article 27, § 35C of the Code; [8]

(ii) rape or sexual offense under Article 27, §§ 462 through 464B [9] of the Code;

(iii) attempted rape or attempted sexual offense in the first degree or in the second degree under Article 27, § 464F of the Code; or

(iv) in a juvenile court proceeding, abuse or neglect as defined in § 5–701 of the Family Law Article.

(c) *Recipients and offerors of statement.*-An out of court statement may be admissible under this section only if the statement was made to and is offered by a person acting lawfully in the course of the person's profession when the statement was made who is:

(1) a physician;

(2) a psychologist;

(3) a nurse;

(4) a social worker; or

(5) a principal, vice principal, teacher, or school counselor at a public or private preschool, elementary school, or secondary school.

---

**8.** The current version of this statute is found at MD CODE ANN, CRIM § 3–601 (2002).

**9.** The current version of this statute is found at MD CODE ANN, CRIM § 3–307 (2002).

(d) *Conditions Precedent.*—(1) Under this section, an out of court statement by a child victim may come into evidence to prove the truth of the matter asserted in the statement:

(i) if the statement is not admissible under any other hearsay exception; and

**(ii) regardless of whether the child victim testifies.**

**(2) If the child victim does not testify, the child victim's out of court statement will be admissible only if there is corroborative evidence that;**

**(i) the defendant had the opportunity to commit the alleged crime;** . . . .

(e) *Particularized guarantees of trustworthiness.*—(1) A child victim's out of court statement is admissible under this section only if the statement has particularized guarantees of trustworthiness.

(2) To determine whether the statement has particularized guarantees of trustworthiness under this section, the court shall consider, but is not limited to, the following factors:

(i) the child victim's personal knowledge of the event;

(ii) the certainty that the statement was made;

(iii) any apparent motive to fabricate or exhibit partiality by the child victim, including interest, bias, corruption, or coercion;

(iv) whether the statement was spontaneous or directly responsive to questions;

(v) the timing of the statement;

(vi) whether the child victim's young age makes it unlikely that the child victim fabricated the statement that represents a graphic, detailed account beyond the child victim's expected knowledge and experience;

(vii) the appropriateness of the terminology of the statement to the child victim's age;

(viii) the nature and duration of the abuse or neglect;

(ix) the inner consistency and coherence of the statement;

(x) whether the child victim was suffering pain or distress when making the statement;

(xi) whether extrinsic evidence exists to show the defendant or child respondent had an opportunity to commit the act complained of in the child victim's statement;

(xii) whether the statement was suggested by the use of leading questions; and

(xiii) the credibility of the person testifying about the statement.

(f) *Role of court.*—In a hearing outside of the presence of the jury or before the juvenile court proceeding, the court shall: (1) make a finding on the record as to the specific guarantees of trustworthiness that are in the statement; and

(2) determine the admissibility of the statement.

(g) *Examination of child victim.*—(1) In making a determination under subsection (f) of this section, the court shall examine the child victim in a proceeding in the judge's chambers, the courtroom, or another suitable location that the public may not attend unless the child victim:

(i) is deceased; or

(ii) is absent from the jurisdiction for good cause shown or the State has been unable to procure the child victim's presence by subpoena or other reasonable means.

(2) Except as provided in paragraph (3) of this subsection, any defendant or child respondent, attorney for a defendant or child respondent, and the prosecuting attorney may be present when the court hears testimony on whether to admit into evidence the out of court statement of a child victim under this section.

(3) When the court examines the child victim as paragraph (1) of this subsection requires:

(i) one attorney for each defendant or child respondent, one attorney for the child victim, and one prosecuting attorney may be present at the examination; and

(ii) the court may not allow a defendant or child respondent to be present at the examination. . . .

(Emphasis added).

Appellant objected to the social worker's testimony on the ground that reception of this testimony would violate appellant's "right of confrontation." The circuit court overruled that objection. At trial, Ms. Wakeel testified as follows.[10]

Tiffany stated that, one day appellant approached her in her bedroom, touched her chest and vaginal area, and then touched her behind. As Tiffany was talking about this episode, she became visibly upset and teary-eyed and her voice was quivering.

Megan stated that, one day as she was going downstairs and appellant was coming upstairs, appellant reached for her vaginal area as if he was going to pick her up, touched her vaginal area, and "touched her chest area." Megan then pinched him on the leg. The touching occurred over Megan's clothes. As Megan was recounting the events, she appeared "very angry." Megan also stated that appellant hit her a lot on the face and on the arms; that she was not close to appellant; and that she knew him because he was staying at her babysitter's house.

Raven stated that, one day when she was watching television, appellant came in and sat down on the bed with her and pulled her so that she was seated between his legs. As she was sitting there, "he put his arms around her and placed his

---

**10.** According to Ms. Abdul–Wakeel, she interviewed the girls after receiving a police report stating that "Snowden had sexually abused these children." She relied on one unrecorded interview with each alleged victim. Her interview technique included non-leading and general questions. She used diagrams to ascertain what vocabulary the girls used for various body parts, and for locating the area where they said they were touched.

Ms. Wakeel also testified that (1) she did not think the girls had any motive for making up the stories about the appellant, (2) she thought the girls were credible, and (3) she concluded, from her conversations with the children and their mothers, that appellant had the opportunity to touch the girls.

hands in her vaginal area and rubbed his private area against her buttocks." The touching occurred over Raven's clothes.

Tiffany's mother testified that in January, 2002, Tiffany, Megan and Raven told her something had happened with appellant. She called appellant and asked him to come home from work. When he arrived, she and Tiffany confronted him, but he denied their accusations. The mother of Megan and Raven threatened to call the police, and appellant left.

Appellant testified that he did not have any sexual contact with any of the children. He cooperated with the police, at whose suggestion he wrote a letter of apology to the children, explaining that he had never intended to touch them improperly. As stated above, appellant was convicted of six counts of third degree sexual offense and one count of child abuse.[11] This appeal followed.

## Discussion

### I & II

The Confrontation Clause guarantees the right of a criminal defendant to "be confronted with witnesses against him." U.S. Const. amend. VI.[12] "The primary interest se-

---

**11.** The court imposed the following sentence: Count I–10 years, 5 suspended for supervised probation; Counts II and III–3 years to run concurrent with count I; Count IV–3 years to run concurrent with counts I through III; Count V–5 years, all suspended but 18 months, consecutive to counts I through IV; Count VI–5 years, all suspended but 18 months, consecutive to counts I through V; Count VII–5 years, all suspended but 18 months, concurrent with count VI, consecutive to counts I through V. The sentence of incarceration was to follow by twelve years of supervised probation with an order to have no future unsupervised contact with children under the age of 16, to have no future contact with the families of the children, and to register as a sex offender.

**12.** The Confrontation Clause of the Sixth Amendment is applicable to the States through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Article 21 of the Maryland Declaration of Rights (MDR) provides, "[t]hat in all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him." The Confrontation Clause of the Sixth Amendment of the United States and Article 21 of MDR are in *pari materia.*

cured by the confrontation clause is the right of cross-examination." *Crawford v. State*, 282 Md. 210, 214, 383 A.2d 1097 (1978); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). In 1980, the United States Supreme Court stated that the introduction of a hearsay declaration will not violate a criminal defendant's right of confrontation if the declaration is either (1) a "firmly rooted" exception to the rule against hearsay,[13] or (2) bears "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 62–66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (citing *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895)).

Both *Crawford v. State* and *Ohio v. Roberts* presented the question of whether the Confrontation Clause required that the trial judge exclude preliminary hearing testimony that had been given by a witness who was unavailable to testify at trial. In *Crawford*, the Court of Appeals held that the preliminary hearing testimony was admissible because the appellant "had a full opportunity" to cross examine the witness during the preliminary hearing. 282 Md. at 222, 383 A.2d 1097. Although the United States Supreme Court could have taken that very same approach in *Roberts* (because the witness who was unavailable at trial had been called to the stand by defense counsel during the preliminary hearing), the *Roberts*

---

*Craig v. State*, 322 Md. 418, 430, 588 A.2d 328 (1991), *vacated on other grounds, Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *see also* Lynn McLain, *Children are Losing Maryland's "Tender Years" War*, 27 U. Balt. L.Rev. 21, 45 (1997).

**13.** These "firmly rooted" exceptions include (1) statements by a co-conspirator during and in furtherance of the conspiracy, *Bourjaily v. United States*, 483 U.S. 171, 183–84, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); (2) excited utterances, *White v. Illinois*, 502 U.S. 346, 356–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); and (3) statements made to a physician for purposes of obtaining proper medical treatment, *id.* In *Chapman v. State*, 331 Md. 448, 628 A.2d 676 (1993), citing *White, Bourjaily*, and *Roberts*, the Court of Appeals stated that "the Supreme Court has indicated that several classic hearsay exceptions fall within the 'firmly rooted' category. These include: dying declarations, prior testimony, business records, public records, excited utterances, statements made in seeking medical treatment, and co-conspirator statements." *Id.* at 457 n. 3, 628 A.2d 676.

Court held that the preliminary hearing testimony was admissible under the "particularized guarantees of trustworthiness" standard. 448 U.S. at 66, 100 S.Ct. 2531. CP 11–304 represents a legislative response to *Roberts.*

Recognizing that the "confrontation" issue arises if the child does not testify, CP 11–304 expressly conditions the admissibility of the statements on a showing that the statements contain "particularized guarantees of trustworthiness." *See* (e)(1). In making this determination, a court must evaluate thirteen separate factors,[14] and "make a finding on the record as to the specific guarantees of trustworthiness that are in the statement." *See* (f). Before making this finding, the court must examine the child, either in chambers, the courtroom, or another suitable location where the public is not in attendance. *See* (g)(1). In the case at bar, the circuit court complied with all of the statutory preconditions for admitting the children's hearsay statements.

CP 11–304 is the most recent version of the tender years statute that originally appeared in MD.CODE ANN., COURTS & JUDICIAL PROCEEDINGS (C.J.) § 9–103.1.[15] Under C.J. § 9–103.1, which was enacted in 1988, an out of court statement made by an alleged child victim was admissible "if the child [was] subject to cross-examination about the out of court statement and testifie[d]: (i) at the criminal proceeding; or (ii) by closed-circuit television." *Id.* at 48 & n. 187 (quoting former C.J. § 9–103.1(c)(1)). The statement was also admissible if the child was unavailable to testify due to (1) death, (2) absence from the jurisdiction, (3) serious physical disability, or (4) inability to communicate about the alleged offense due to

---

**14.** *See* (e)(2), including, but not limited to: "any apparent motive to fabricate or exhibit partiality by the child victim, including interest, bias, corruption, or coercion," (e)(2)(iii); "the inner consistency and coherence of the statement," (e)(2)(ix); "whether the child victim was suffering pain or distress when making the statement," (e)(2)(x); and "the credibility of the person testifying about the statement," (e)(2)(xiii).

**15.** In 1996, C.J. § 9–103.1 was transferred to Art. 27, § 775. *See* Lynn McLain, *Children are Losing Maryland's "Tender Years" War,* 27 U. BALT. L.REV 21, 48 (1997).

serious emotional distress. *Id.* at 48 & n. 188 (citing former C.J. § 9–103.1(c)(1)(i)).[16] When the child declarant was unavailable to testify, the statute conditioned admissibility of the statements on the existence of corroborative evidence. *Id.* at 47 & n. 181 (citing C.J. § 9–103.1(c)(2)(iii)). In 1994, the legislature amended C.J. § 9–103.1 to allow the use of the tender years exception regardless of whether the child is available to testify. Whether that amendment was consistent with *Ohio v. Roberts* is now a moot question.

■ On March 8, 2004, in *Crawford v. Washington,* 541 U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars the introduction of a "testimonial" hearsay statement unless (1) the hearsay declarant is unavailable, and (2) the defendant had a prior opportunity to cross examine the declarant. *Id.* at 1374. In that case,[17] which we must apply to the "confrontation" issue presented in the case at bar,[18] Crawford's conviction was reversed on the ground that the introduction of his

---

**16.** The fourth ground for establishing unavailability is similar to the Maryland statute that permits a child to testify over closed-circuit television if "[t]he judge determines that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *See* C.P. 11–303 (2003). In *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the United States Supreme Court upheld the constitutionality of the procedure authorized by that statute (which was then § 9–102 of the Courts and Judicial Proceedings Article).

**17.** All nine Justices agreed that Mr. Crawford was entitled to a new trial. Six Justices joined the majority opinion, which was authored by Justice Scalia. Justice O'Connor joined the concurring opinion authored by Chief Justice Rehnquist, who disagreed with "the Court's decision to overrule *Ohio v. Roberts,* [because] a new interpretation of the Confrontation Clause is not backed by sufficiently persuasive reasoning to overrule long-established precedent ... and is by no means necessary to decide the present case." 124 S.Ct. at 1374.

**18.** The appellate court is required to apply the law as it exists on the date that the opinion is filed. *Smart v. State,* 58 Md.App. 127, 131, 472 A.2d 501 (1984), *Matusky v. State,* 105 Md.App. 389, 398, 660 A.2d 935 (1995), *aff'd* 343 Md. 467, 682 A.2d 694 (1996). We are therefore required to apply *Crawford* to the "confrontation" issue that was preserved for our review.

wife's hearsay statement to police officers violated his right of confrontation.[19] The trial court had admitted the statement on the ground that the statement contained "particularized guarantees of trustworthiness." [20] The jury found Crawford guilty of assault. *Id.* Using a nine-factor test, the Washington Court of Appeals reversed, concluding that the statement was not trustworthy. *Id.*[21] The Supreme Court of Washington reinstated the conviction, holding that the statement *did* contain particularized guarantees of trustworthiness.[22]

The United States Supreme Court (*Crawford* Court) traced the criminal defendant's right of confrontation to English common law,[23] *id.* at 1360 (citations omitted), noting that many

---

**19.** Crawford was defending assault and attempted murder charges on the ground that he had acted in self-defense. His wife gave a statement to the police that tended to incriminate her husband, essentially saying she had not seen anything in the victim's hands after her husband stabbed him. The defendant invoked the marital privilege, so the wife was unavailable to testify. In Washington, the marital privilege does not extend to a spouse's out of court statements admissible under a hearsay exception. Therefore, the State of Washington used the statement against penal interest hearsay exception, *see* WASH R. EVID 804(b)(3) (2003), arguing that the wife's statement could have implicated her as an accessory to the crime.

**20.** The trial court offered the following reasons for finding the statement trustworthy: (1) the wife was not shifting blame, but corroborating her husband's story that he acted in self-defense; (2) she had direct knowledge as an eyewitness; (3) the events she was describing were recent; and (4) she was being questioned by a "neutral" police officer. *See Crawford,* 124 S.Ct. at 1358.

**21.** The Court of Appeals provided the following reasons why the statement was not trustworthy: (1) the statement contradicted another statement she had given; (2) it was in response to specific questions; (3) at one point, she admitted closing her eyes during the stabbing. *Id.* at 1358.

**22.** The Supreme Court of Washington concluded that the statement made by Crawford's wife was "reliable," explaining that (1) the statements made by both Crawford and his wife had similarities and therefore "interlocked." *State v. Crawford,* 147 Wash.2d 424, 437–39, 54 P.3d 656 (2002); and (2) " 'when a codefendant's confession is virtually identical [to, *i.e.,* interlocks with,] that of a defendant, it may be deemed reliable.' " *Id.* at 437, 54 P.3d 656 (quoting *State v. Rice,* 120 Wash.2d 549, 570, 844 P.2d 416 (1993)).

**23.** A question that repeatedly arose in England during the late 1600s was whether the admissibility of the statement of an unavailable wit-

of the American Colonies (including Maryland) adopted Declarations of Rights that expressly included the right of confrontation. *Id.* at 1362. The First Congress included the Confrontation Clause in the proposal that became the Sixth Amendment.[24]

The *Crawford* Court concluded that, because "the principal evil at which the Confrontation Clause was directed was ... use of *ex parte* examinations as evidence against the accused," the Confrontation Clause applies to some out of court statements:

An off-hand, over-heard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, *ex parte* examinations might sometimes be admissible

---

ness depended on whether the defendant had been provided an opportunity to cross-examine his accuser. *Id.* at 1360. The Court determined that the general view of the courts of the time was that a defendant must indeed have this opportunity for cross examination. *Id.* at 1360–61 (citing *King v. Paine*, 5 Mod. 163, 87 Eng. Rep. 584 (1696) in which the court ruled that, even though a witness was deceased, his examination was not admissible against the defendant because the defendant had not been present for it, and therefore had not been provided with the benefit of cross-examining his accuser). According to the *Crawford* Court, when Parliament made the right statutory in 1848, it "merely 'introduced in terms' what was already afforded the defendant 'by the equitable construction of the law.' " *Id.* at 1361 (quoting *Queen v. Beeston*, 29 Eng. L. & Eq. R. 527, 529 (Ct.Crim.App. 1854) (Jervis, C.J.)). In addition, "[c]ourts ... developed relatively strict rules of unavailability, admitting examinations only if the witness was demonstrably unable to testify in person." *Id.* at 1360 (citations omitted).

**24.** *Id.* at 1362–63. According to the *Crawford* Court, the First Congress included the Confrontation Clause in response to calls from scholars and proclamations such as " '[n]othing can be more essential than the cross examining [of] witnesses, and generally before the triers of the facts in question ....,' " (citing 2 Debates on the Federal Constitution 110–111 (J. Elliot 2d ed. 1863); and quoting R. Lee, Letter IV by the Federal Farmer (Oct. 15, 1787), reprinted in 1 B. Schwartz, The Bill of Rights: A Documentary History 469, 473 (1971)).

under modern hearsay rules, but the Framers certainly would not have condoned them.

*Id.* at 1364.

*Crawford* draws a distinction between two different kinds of out-of-court statements, those that are "testimonial" and those that are not.[25] Because the Confrontation Clause applies to "testimony" against the accused, the introduction of testimonial statements offends the Confrontation Clause. *Id.* (citation omitted).[26] The *Crawford* Court rejected the proposition that an unsworn statement was not "testimonial," and expressly held that interrogations by law enforcement officers are included within the class of "testimonial" hearsay,[27] as are "prior testimony at a preliminary hearing, before a grand jury, or at a former trial." *Id.* at 1364–65, 1374.

---

**25.** The case at bar does not present the issue of whether the *Roberts* test remains applicable to non-testimonial statements.

**26.** The *Crawford* Court did not provide an exhaustive list of those statements that are—or are not—testimonial. The Court did, however, offer two examples of statements that could be considered "testimonial": (1) " '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' " *id.* at 1364 (quoting Brief for Petitioner, Crawford, at 23); and (2) " 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' " *id.* (quoting *White v. Illinois*, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)(Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment)). The *Crawford* Court also characterized as "testimonial" a " '[s]tatement[ ] ... made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.* (quoting Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 3).

**27.** The *Crawford* Court noted that it was "implausible that a provision which concededly condemned trial by sworn *ex parte* affidavit thought trial by *unsworn ex parte* affidavit perfectly OK. (The claim that unsworn testimony was self-regulating because jurors would disbelieve it ... is belied by the very existence of a general bar on unsworn testimony.)" *Id.* at 1365 n. 3.

The *Crawford* Court ultimately concluded that "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 1365. The *Crawford* Court explained that (1) while there have always been exceptions to the rule against hearsay, there is "scant evidence that exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case," and (2) exceptions such as business records and statements made in furtherance of a conspiracy are not "testimonial." *Id.* at 1367. (citation omitted) (footnote omitted).[28]

When the admissibility of nontestimonial hearsay is at issue, the individual states are entitled to determine what statements should be admitted and what statements should be excluded,[29] but when "testimonial evidence is at issue . . ., the Sixth Amendment demands what the common law required: una-

---

**28.** The *Crawford* Court recognized that some "dying declarations" could be characterized as testimonial and that "[a]lthough many dying declarations may not be testimonial, there is authority for admitting even those that clearly are." *Id.* at 1367 n. 6 (citations omitted).

The *Crawford* Court also recognized that the case of *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) is "arguably in tension with the rule requiring a prior opportunity for cross-examination when the proffered statement is testimonial." *Id.* at 1368 n. 8. *White* involved statements made by a four-year old child alleging that the defendant sexually assaulted her. *White* held that if a hearsay declaration satisfies the foundational requirements of a firmly rooted exception to the rule against hearsay, such as an excited utterance or statement in contemplation of medical treatment, the Confrontation Clause does not require that the hearsay statement be excluded unless (1) the declarant actually testifies, or (2) the proponent of the statement establishes that the declarant is unavailable to do so. 502 U.S. at 356–58, 112 S.Ct. 736. According to the *Crawford* Court, "the only question presented in *White* was whether the Confrontation Clause imposed an unavailability requirement on the types of hearsay at issue [rather than] the question [of] whether certain of the statements, because they were testimonial, had to be excluded *even if* the witness was unavailable." *Crawford, supra,* 124 S.Ct. at 1368 n. 8.

**29.** *Id.* at 1374 (citing the approach taken in *Ohio v. Roberts, supra,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). "[I]t is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law. . . ." *Id.*

vailability and a prior opportunity for cross examination." *Id.* at 1374.

■■ We are persuaded that the statements testified to by Ms. Wakeel at trial were "testimonial." As the trial court stated: "The children were interviewed for the expressed purpose of developing their testimony by Ms. Wakeel, under the relevant Maryland statute that provides for the testimony of certain persons in lieu of a child, in a child sexual abuse case . . . ." In light of *Crawford*,[30] appellant is entitled to a new trial at which the State will be prohibited from introducing any testimonial hearsay declarations of a person who (1) is available to testify,[31] or (2) made the testimonial hearsay statements on an occasion at which the defendant did not have an opportunity for cross-examination.[32]

## III

■ The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy." *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *State v. Griffiths*, 338 Md. 485,

---

**30.** The *Crawford* Court concluded that, because the introduction of statements found to be reliable by the trial judges is "fundamentally at odds with the right of confrontation," multiple-factor tests for reliability are, ironically, unreliable. *Id.* at 1370. Providing examples in support of its conclusion that the *Roberts* test is too "malleable," the *Crawford* Court explained that the *Roberts* test is both (1) excessively broad because "it applies the same mode of analysis whether or not the hearsay consists of *ex parte* testimony;" and (2) overly narrow because "[it] admits statements that *do* consist of *ex parte* testimony upon a mere finding of reliability." *Crawford*, at 1369–70.

**31.** Because the State did not establish that the children were unavailable to testify, hearsay statements admitted in the case at bar did not satisfy either of the *Crawford* foundational requirements.

**32.** Although the ultimate goal of the Confrontation Clause is to ensure that evidence is reliable, the defendant's prior opportunity for cross-examination is now a "necessary" precondition for the introduction of a testimonial statement made by a person who is unavailable to testify at trial. *Id.* at 1370–71.

489, 659 A.2d 876 (1995).[33] Likewise, under Maryland's common law of double jeopardy,[34] a defendant cannot be "put in jeopardy again for the same offense—in jeopardy of being convicted of a crime for which he had been acquitted; in jeopardy of being twice convicted and punished for the same crime." *Gianiny v. State,* 320 Md. 337, 347, 577 A.2d 795 (1990). We disagree with appellant's assertion that there was insufficient evidence before the trial court to prove that (1) appellant touched the complainants' for the purpose of sexual arousal, and (2) appellant committed six counts of third degree sexual offense.[35]

The court relied upon the following evidence when it found appellant guilty of child abuse and the related offenses:

> The children were interviewed for the expressed purpose of developing their testimony by Ms. Wakeel, under the relevant Maryland statute that provides for the testimony of certain persons in lieu of a child, in a child sexual abuse case in court earlier on a—well, it was in the context of the trial, but technically it's a pretrial motion—did accept, after interviewing the children, did accept the testimony of Ms. Wakeel.

---

**33.** The Double Jeopardy Clause of the Fifth Amendment was made applicable to the States through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 793, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *State v. Griffiths,* 338 Md. 485, 489, 659 A.2d 876 (1995).

**34.** Although the Maryland Constitution contains no express double jeopardy provision, such a protection exists under Maryland common law. *Ware v. State,* 360 Md. 650, 708, 759 A.2d 764 (2000) (citations omitted).

**35.** The crime of third degree sexual assault is codified as Md.Code Ann., Crim Law § 3–307 (2003). The statute prohibits sexual contact with a *person under the age of fourteen* when "the person performing the sexual contact is at least 4 years older than the victim." *Id.* at (a)(3). Sexual contact is described as the "intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification or for abuse of either party." *Id.* at (f)(1). "It does not include acts commonly expressive of familial or friendly affection, or acts for accepted medical purposes." *Id.*

Accordingly, the Court does believe that the children were of the belief that they were improperly touched, whether they knew it or not, in violation of Maryland law.

The police officer who was assigned the investigation did arrest the Defendant, did conduct an interview with the Defendant, an interrogation if you will. The Defendant, at the conclusion of that session, did agree, after having signed an advice of rights form, did make certain voluntary admissions in the form of what can only be described as two abortive efforts at a letter of apology and one more complete letter of apology. It is the Court's specific finding that these statements from the Defendant were voluntary in nature; that they were not coerced or induced by an illegitimate means such as a promise of some type, or the like.

I conclude, frankly from these letters, that the Defendant was hopeful that if it was sincerely accepted by the young girls and probably as importantly by their mothers, that the charges would not be pursued and that he would not have to face the circumstances of which he finds himself involved today.

The most revealing, obviously, is the last letter in which it says: "Girls, I'm very sorry that this happen. It was a accident. You girls are always playing with me and accidents do happen. I just want you to know that I didn't have any attention"—meaning, I think, I take it to mean "intention"—"to touch you girls in the wrong place. I pray that you girls understand that you did nothing wrong. I pray to God that you girls forgive me. I mean it with all my heart and soul, Uncle Mike." Dated October 14, 2002.

This last letter indicates to the Court, and the Court accepts it as proof beyond a reasonable degree that the event did take place. In other words, that there was a touching of these girls by the Defendant. And further, the Court is satisfied that there is proof beyond a reasonable doubt that the touching took place in the nature as described by the social worker as the prophylactic flow for the

girls under the statute; and that is that it took place in the locations and in the manner in which it did.

So that the Court is then left to determine whether it was an accidental touching or, I guess you could describe it as an erotic touching—for the Defendant, not for the girls. And the Court finds that it indeed was not an accidental touching; that it was intentional. And the reason for that is that if it were just one child it might be argued that it was a mistake, and that might have some credence. But where it is all three children, the touching is different in certain ways and different places; the Court is satisfied beyond a reasonable doubt that the touching took place, and that the touching was a prohibited touching under law, and that it was done with the intent for sexual arousal. . . .

 We are persuaded that the State's evidence was sufficient to permit the inference that appellant's conduct was accompanied by the requisite criminal intent. "There are few facts, even ultimate facts, that cannot be established by inference." *Moore v. State*, 73 Md.App. 36, 45, 533 A.2d 1 (1987). There is nothing mysterious about the use of inferences in the factfinding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts. *Robinson v. State*, 315 Md. 309, 318, 554 A.2d 395 (1989). If the admission of Ms. Wakeel's testimony had been introduced without objection, the State's evidence would have been entirely sufficient to support appellant's convictions.[36] Although a

---

**36.** The standard for our review of the sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State*, 307 Md. 164, 167, 512 A.2d 1056 (1986) (citing *Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). When, as in appellant's situation, a case is tried without a jury, this Court is required to "review the case on both the law and the evidence." Md. Rule 8–131(c); *Elias v. State*, 339 Md. 169, 185, 661 A.2d 702 (1995). We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the

defendant may not be retried when an appellate court determines that the evidence presented at trial was insufficient to sustain the verdict, the same is not true when the reversal is based upon an erroneous evidentiary ruling.[37]

In *State v. Boone,* 284 Md. 1, 393 A.2d 1361 (1978), the Court of Appeals held that when a trial court erroneously admits evidence, and that ruling results in a reversal, double jeopardy does not preclude a retrial on the ground that if the inadmissible evidence had never been presented. The appellant would have been entitled to a judgment of acquittal In *Boone,* the conviction was reversed by this Court because the trial court erroneously denied a motion to suppress evidence that was sufficient to sustain the verdicts. *Id.* at 15, 393 A.2d 1361. Once that evidence was discounted, however, there was insufficient evidence to permit the trier of fact to convict. *Id.* After granting Boone's petition for writ of certiorari, the Court of Appeals rejected his contention that double jeopardy precluded the State from retrying him because the admissible evidence was insufficient to sustain the conviction. *Id.* at 18, 393 A.2d 1361; *see also State v. Kramer,* 318 Md. 576, 593, 569 A.2d 674 (1990); *Huffington v. State,* 302 Md. 184, 189, 486 A.2d 200 (1985).

As was the situation in *Boone,* the evidence presented by the State in the case at bar was sufficient to support the convictions. Because we reverse on the basis of the erroneous admission of hearsay testimony, rather than on the basis of

---

opportunity of the trial court to judge the credibility of the witnesses." Rule 8–131(c).

**37.** *Lockhart,* 488 U.S. at 39–41, 109 S.Ct. 285 (citing *Burks v. United States,* 437 U.S. 1, 14–17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (holding that when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge)). "Reversal for trial error ... is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, . . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error... " *Burks,* 437 U.S. at 15, 98 S.Ct. 2141.

the insufficiency of the evidence that was actually presented during trial, appellant is entitled to a new trial. He is not, however, entitled to a dismissal of the charges on double jeopardy grounds.

**JUDGMENTS REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY MONTGOMERY COUNTY.**